IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SAMUEL SILBER; SIDNEY EDDY )
STRULOVITS; SHERI LYNN )
STRULOVITS; MOSHE GORDON; )
DANIEL JACOB; TSOFIYA JACOB; )
LEWIS WEINGER; MORIYAH )
SHAPIRO; JONATHAN SHAPIRO; )
INBAL NAZDARE LEVY; YAIR )
SPOLTER; ERIC CHARLES MARX; )
SUSAN LYNN MARX; ALON MADIEL; )
DANIELLE MADIEL; GULIE MADIEL )
HOWARD RABIN; JEFFREY T. )
SCHWARTZ; and DAVID TESLER, )
 )
        Plaintiffs, )
 )   C.A. No. 1:18-cv-01884-RGA
     v. )
 )
AIRBNB, Inc., )
 )
        Defendant. )

**OPENING BRIEF IN SUPPORT OF
DEFENDANT AIRBNB'S MOTION TO DISMISS**

Dated: January 29, 2019

OF COUNSEL:
Jamie Gorelick
David W. Bowker
Benjamin Chapin
Leon T. Kenworthy
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue
Washington, DC 20006
Tel: (202) 663-6000
Jamie.Gorelick@wilmerhale.com
David.Bowker@wilmerhale.com
Benjamin.Chapin@wilmerhale.com
Leon.Kenworthy@wilmerhale.com

YOUNG CONAWAY STARGATT &
   TAYLOR, LLP

C. Barr Flinn (No. 4092)
Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Tel: (302) 571-6600
bflinn@ycst.com
apoff@ycst.com
rvrana@ycst.com

*Attorneys for Defendant Airbnb, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................... ii

NATURE AND STAGE OF PROCEEDINGS ............................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ...........................................1

STATEMENT OF FACTS .........................................................................................3

     A.    Airbnb's Disputed Regions Policy And Its Application To Israeli
          Settlements ..........................................................................................4

     B.    Plaintiffs' Listings .................................................................................5

     C.    Plaintiffs' Allegations ...........................................................................7

ARGUMENT ..............................................................................................................7

I.     PLAINTIFFS' CLAIMS FAIL FOR LACK OF SUBJECT MATTER
      JURISDICTION ..............................................................................................8

     A.    There Is No Subject Matter Jurisdiction Because Airbnb's Policy Has Not
          Been Implemented And Plaintiffs' Claims Are Therefore Not Ripe .....................8

     B.    There Is No Subject Matter Jurisdiction Because Plaintiffs Can Claim No
          Injury-In-Fact And Therefore Lack Standing .........................................9

II.    PLAINTIFFS FAIL TO STATE A CLAIM BECAUSE THE FHA DOES NOT
      APPLY OUTSIDE THE UNITED STATES .................................................10

III.   PLAINTIFFS FAIL TO STATE A CLAIM BECAUSE THE FHA DOES NOT
      APPLY TO TEMPORARY VACATION RENTALS .......................................14

IV.   PLAINTIFFS FAIL TO STATE A CLAIM BECAUSE THEY DO NOT
      PLAUSIBLY ALLEGE THAT AIRBNB'S POLICY CONSTITUTES
      UNLAWFUL DISCRIMINATION .................................................................16

V.    PLAINTIFFS' CLAIMS ARE PRECLUDED BY THE FIRST AMENDMENT
      AND SECTION 230 OF THE COMMUNICATIONS DECENCY ACT. .......................19

CONCLUSION.........................................................................................................20

**Cases**

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967)......................................................................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................7, 15

*Blumenthal v. Drudge*,
992 F. Supp. 44 (D.D.C. 1998).................................................................................20

*Cmty. Servs., Inc. v. Heidelberg Twp.*,
439 F. Supp. 2d 380 (M.D. Pa. 2006)......................................................................16

*Diamond v. Charles*,
476 U.S. 54 (1986)....................................................................................................10

*EEOC v. Arabian Am. Oil Co.*,
499 U.S. 244 (1991)........................................................................................11, 12, 14

*Fair Hous. Rights Ctr. in Se. Penn. v. Morgan Properties Mgmt. Co., LLC*,
No. CV 16-4677, 2018 WL 3208159 (E.D. Pa. June 29, 2018).............................18

*Gilles v. Davis*,
427 F.3d 197 (3d Cir. 2005)......................................................................................10

*Gotha v. United States*,
115 F.3d 176 (3d Cir. 1997)........................................................................................7

*Green v. Am. Online (AOL)*,
318 F.3d 465 (3d Cir. 2003)......................................................................................20

*Hart v. Dresdner Kleinwort Wasserstein Secs., LLC*,
No. 06 Civ. 0134 (DAB), 2006 WL 2356157 (S.D.N.Y. Aug. 9, 2006)................13

*Howard v. Maximus, Inc.*,
No. 3:13-CV-01111-ST, 2013 WL 7155010 (D. Or. Nov. 20, 2013)....................13

*ICU Med., Inc. v. RyMed Techs., Inc.*,
752 F. Supp. 2d 486 (D. Del. 2010)..........................................................................17

*Int'l Brotherhood of Teamsters v. United States*,
431 U.S. 324 (1977)..................................................................................................16

*Kickflip, Inc. v. Facebook*, Inc.,
   999 F. Supp. 2d 677 (D. Del. 2013)..................................................................8

*Kiobel v. Royal Dutch Petroleum Co.*,
   569 U.S. 108 (2013)..................................................................................11

*Lakeside Resort Enters., LP v. Bd. of Sup'rs of Palmyra Twp.*,
   455 F.3d 154 (3d Cir. 2006)......................................................................15

*Langdon v. Google, Inc.*,
   474 F. Supp. 2d 622 (D. Del. 2007)............................................................20

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)....................................................................................9

*Marshall v. Exelis Sys. Corp.*,
   No. 13-CV-00545, 2014 WL 1213473 (D. Colo. Mar. 24, 2014) .....................12, 14

*Mayer v. Belichick*,
   605 F.3d 223 (3d Cir. 2010)........................................................................8

*Microsoft Corp. v. AT&T Corp.*,
   550 U.S. 437 (2007)..................................................................................10

*Moore v. Red Roof Inn*,
   No. CIV. A. HAR 87-2134, 1989 WL 85364 (D. Md. July 27, 1989) ................15

*Morrison v. National Australia Bank Ltd.*,
   561 U.S. 247 (2010)..............................................................................11, 14

*Mt. Holly Gardens Citizens in Action, Inc. v. Twp. of Mount Holly*,
   658 F.3d 375 (3d Cir. 2011)......................................................................16

*Nat'l Fair Hous. All. v. Carson*,
   330 F. Supp. 3d 14 (D.D.C. 2018) ..............................................................11

*Ofori-Tenkorang v. Am. Int'l Group, Inc.*,
   460 F.3d 296 (2d Cir. 2006)..................................................................12, 13

*Palencar v. Cobler Realty Advisors*,
   No. 3:CV-09-0325, 2009 WL 10184843 (M.D. Pa. Apr. 17, 2009).....................17

*Patel v. Holley House Motel*,
   483 F. Supp. 374 (S.D. Al. 1979) ..............................................................15

*Princeton Digital Image Corp. v. Office Depot Inc.*,
   C.A. No. 13-239, 2016 WL 1533697 (D. Del. Mar. 31, 2016)...........................7

*Pucket v. Hot Springs Sch. Dist. No. 23-2,*
    526 F.3d 1151 (8th Cir. 2008) ............................................................10

*In re Rickel Home Centers, Inc.*,
    209 F.3d 291 (3d Cir. 2000)..................................................................9

*RJR Nabisco, Inc. v. European Cmty.*,
    136 S. Ct. 2090 (2016).................................................................11, 13

*Schneider v. Cty. of Will, State of Ill.*,
    190 F. Supp. 2d 1082 (N.D. Ill. 2002) ..............................................15

*Sentinel Trust Co. v. Universal Bonding Ins. Co.*,
    316 F.3d 213 (3d Cir. 2003)..................................................................4

*Shekoyan v. Sibley Int'l Corp.*,
    217 F. Supp. 2d 59 (D.D.C. 2002) ....................................................16

*Smith v. Trusted Universal Standards*,
    Civ. No. 09-4567 (RBK/KMW), 2010 WL 1799456 (D.N.J. 2010) ......................20

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)..........................................................................7

*Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*,
    135 S. Ct. 2507 (2015).............................................................11, 12, 19

*Thomas v. Union Carbide Agricultural Prods. Co.*,
    473 U.S. 568 (1985)................................................................................8

*Vill. of Bellwood v. Dwivedi*,
    895 F.2d 1521 (7th Cir. 1990) ............................................................16

*Villegas v. Sandy Farms, Inc.*,
    929 F. Supp. 1324 (D. Or. 1996) ........................................................15

*Warth v. Seldin*,
    422 U.S. 490 (1975)..............................................................................10

## Statutes

29 U.S.C. § 206................................................................................12

29 U.S.C. § 623................................................................................12

29 U.S.C. § 630................................................................................13

42 U.S.C. § 1981.........................................................................12, 13

42 U.S.C. § 3601, *et seq.*.................................................................................. *passim*

42 U.S.C. § 12111 ...................................................................................................12

47 U.S.C. § 230(c)(2) ..............................................................................................20

42 U.S.C. § 2000e *et seq.* ......................................................................................12

42 U.S.C. § 2000h-4 ...............................................................................................12

Civil Rights Act of 1991, Pub. L. No. 102–166, 105 Stat. 1071, 1077 ..........................13

**Rules, Regulations, Authorities**

Fed. R. Civ. P. 12(b)(1)........................................................................................1, 7

Fed. R. Civ. P.  12(b)(6)........................................................................................2, 9

24 C.F.R. § 100.5 ...................................................................................................11

*Legal Consequences of the Construction of a Wall in the Occupied Palestinian
Territory*, Advisory Opinion, 2004 I.C.J. 136 .........................................................4

114 Cong. Rec. at 3422 ...........................................................................................11

## NATURE AND STAGE OF PROCEEDINGS

Plaintiffs filed the Complaint against Defendant Airbnb, Inc. ("Airbnb") on November 28, 2018, and filed the Amended Complaint on December 21, 2018. The Amended Complaint asserts that Airbnb's removal of listings located in Israeli settlements in the West Bank violates the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq*. Airbnb files this motion to dismiss the Amended Complaint.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Airbnb is an Internet platform through which home-sharing hosts can list, and travelers can rent, places to stay in 191 countries and more than 81,000 cities. Airbnb's mission is to help create a world where people can belong across the globe.

Although the vast majority of listings on Airbnb's platform are in stable, peaceful places far away from areas of conflict, some are in or near disputed or occupied territories. In such areas, Airbnb faces difficult choices about how best to offer its platform and services consistent with its mission. Airbnb is not alone in this struggle; there are conflicting views at all levels internationally about whether companies should be doing any business at all in such disputed territories.

Airbnb recently developed a framework to make such decisions as fairly, rationally, respectfully, and transparently as possible. That framework focuses on the nature of the properties, not the people who list or book them. It was not designed nor has it been applied to choose one part of the Airbnb community over another or to otherwise exacerbate any conflict. To the contrary, the company seeks to navigate difficult political situations neutrally and in accordance with its desire to further a sense of belonging.

As part of that effort, on November 19, 2018, Airbnb announced a decision to remove from its platform approximately 200 listings for properties located in Israeli settlements in the

West Bank.  Airbnb has not implemented that decision and continues to work with experts to develop an implementation plan.  Because this process is ongoing, Airbnb has neither removed listings in Israeli settlements in the West Bank nor restricted the ability of any users to list, share, and book such properties.  The Host Plaintiffs' listings therefore remain available for booking through Airbnb, and Guest Plaintiffs remain free to book these or any other listings through Airbnb.

Plaintiffs' notion that Airbnb "discriminates against Jews and/or Israelis . . . on the basis of race, religion and national origin," is both false and directly contrary to allegations in the Amended Complaint.  As Plaintiffs acknowledge, Airbnb has followed its own policy requiring all members of the Airbnb community—users and the company alike—to affirmatively agree to "treat everyone in the Airbnb Community—regardless of their race, religion, national origin, ethnicity, disability, sex, gender identity, sexual orientation, or age—with respect, and without judgment or bias."  Am. Compl. (D.I. 6) ¶ 31.  Plaintiffs further admit Airbnb made the decision to "remove listings in Israeli settlements in the occupied West Bank" not because of the race, religion, or national origin of its users, but rather because those listings are in parts of occupied territory that are "at the core of the [territorial] dispute between Israelis and Palestinians."  *Id.* ¶ 34.  The policy applies to these properties without regard to users' race, religion, or national origin, which explains why Plaintiffs—and all users alike—are still able to use Airbnb's platform and services to list or book properties in Israel and around the world.  Against this backdrop, the fatal flaws in Plaintiffs' complaint are self-evident—and eliminate the need for this Court to wade into the challenging quagmire of disputed territory in the West Bank.

As an initial matter, Plaintiffs' lawsuit fails for lack of subject matter jurisdiction under Rule 12(b)(1).  The policy in question has not been implemented—so Plaintiffs' allegations of

injury are demonstrably untrue. Plaintiffs' claims are therefore not ripe and they have no standing to sue. Even if there were subject matter jurisdiction—and there is not—Plaintiffs' claims would fail for a litany of additional reasons under Rule 12(b)(6).

*First*, Plaintiffs have failed to state a claim under the Fair Housing Act. The FHA does not apply outside the United States, and Plaintiffs allege no domestic application of the statute.

*Second*, the FHA applies by its terms only to certain family residences, not to short-term vacation rentals like those on the Airbnb platform.

*Third*, even if the FHA applied outside the United States—which it does not—Plaintiffs do not (and cannot) allege facts demonstrating either that Airbnb's policy is intentionally discriminatory or has a discriminatory impact on the basis of race, religion, or nationality. To the contrary, Airbnb steadfastly believes in and has complied with its express non-discrimination commitment, and Plaintiffs—like all users—remain free to use Airbnb to list or rent properties.

*Finally*, Airbnb's policy is protected by the First Amendment and Airbnb is immune from liability under the Communications Decency Act, which gives Airbnb a protected right to remove objectionable content—including listings in disputed territory—from its platform.

For all these reasons, Plaintiffs' Amended Complaint should be dismissed in its entirety.

## STATEMENT OF FACTS

Airbnb offers an Internet home-sharing platform that enables users to list and book properties around the world. Airbnb does not own, manage, control, sell, or otherwise operate the properties on its platform. Rather, Airbnb provides an online platform that allows third-party users—including both owners and renters (called "Hosts") who wish to offer their unique properties and travelers who wish to book them (called "Guests")—to connect with each other for the purpose of home-sharing.

**A.      Airbnb's Disputed Regions Policy And Its Application To Israeli Settlements**

Airbnb's platform is available to users throughout the world.  Am. Compl. ¶ 30.  Using

Airbnb's platform, hosts have listed, and guests have booked, properties in Israeli settlements in

the West Bank.  *Id.* ¶ 32.[1]

On November 19, 2018, Airbnb announced a new Listings in Disputed Regions policy

that would govern Airbnb's approach toward Host properties located in disputed, occupied

territories (the "Policy Statement").  Decl. of Kyle Miller ("Miller Decl."), Ex. A, Listings in

Disputed Regions Statement; *see* Am. Compl. ¶ 34.[2]  In considering how to treat such listings,

Airbnb publicly committed to a decision-making framework that will: (1) recognize that each

situation is unique and requires a case-by-case approach; (2) consult with a range of experts and

Airbnb's community of stakeholders; (3) assess any potential safety risks for Airbnb's hosts and

guests; (4) evaluate whether the existence of listings is contributing to existing human suffering;

---

[1]      The "West Bank" refers to a disputed region west of the Jordan River between Israel and
Jordan.  "Israeli settlements" in the West Bank refer to post-1967, permanent Israeli
communities formed in Israeli-occupied, disputed territory between Israel and Jordan.  *See* Decl.
of Adam W. Poff ("Poff Decl."), Ex. A, *Legal Consequences of the Construction of a Wall in the
Occupied Palestinian Territory*, Advisory Op., 2004 I.C.J. 136 (July 9) ("*ICJ Legal
Consequences Op.*"); *see also*, Poff Decl., Ex. B, U.S. Dep't of State, Office of the Legal
Adviser, Letter from Herbert J. Hansel to House Comm. on For. Affairs in Response to an
Inquiry Regarding U.S. Vote on UNSCR 465, at 777 (Apr. 21, 1978).  These Israeli settlements
are, according to the opinion of the U.S. Department of State, Office of the Legal Adviser,
"inconsistent with international law" because they violate Israel's obligations not to "transfer
parts of its own civilian population into the territory it occupies."  *Id.* at 779 (citing Fourth
Geneva Convention, 6 U.S.T. 3516, Aug. 12, 1949, Article 49).  Many settlements are also built
on private Palestinian land allegedly expropriated without compensation.  *See* Poff Decl., Ex. C,
Israeli Min. of For. Affairs, Summary of Op. Concerning Unauthorized Outposts by Talya Sason
(Mar. 10, 2005); *see also ICJ Legal Consequences Op.* at 190, 198.  The U.S. Government
considers these Israeli settlements as an impediment to a peace deal, in part because they
exacerbate tensions and make it difficult to agree on a territorial boundary.  *See* Poff Decl., Ex.
D, Statement by White House Press Sec'y Sean Spicer (Feb. 2, 2017); Poff Decl., Ex. E,
Statement by White House Press Sec'y Josh Earnest (Oct. 5, 2016).

[2]      *See Sentinel Trust Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 216 (3d Cir. 2003)
(when deciding a motion to dismiss, the Court may look to "indisputably authentic documents
underlying the plaintiff's claims," such as the policy being challenged).

and (5) determine whether the existence of listings in the occupied territory has a direct connection to the larger dispute in the region.  Policy Statement.

With respect to settlements in the West Bank, Airbnb observed that "[t]here are conflicting views regarding whether companies should be doing business in the occupied territories that are the subject of historical disputes between Israelis and Palestinians."  *Id.*  It explained that, as to Airbnb, "the question centers on the approximately 200 Airbnb listings in Israeli settlements in the West Bank and whether they should be available for rent on our platform."  *Id.*  Airbnb openly acknowledged, "[w]e are most certainly not the experts when it comes to the historical disputes in this region.  Our team has wrestled with this issue and we have struggled to come up with the right approach."  *Id.*  In applying the decision-making framework to the West Bank, Airbnb concluded that it "should remove listings in Israeli settlements in the occupied West Bank that are at the core of the dispute between Israelis and Palestinians."  *Id.*  Airbnb stated that the announcement did not affect any of the more than 20,000 Airbnb listings in Israel, including East Jerusalem and the Golan Heights.  *Id.*  Airbnb also explained that its policy is neither a boycott nor a protest of Israel or Israeli or Jewish businesses or individuals.  As Airbnb has expressly stated, it does not support the Boycott, Divestment, and Sanctions movement ("BDS movement") against Israel.  *Id.*  In short, the policy and decision are narrowly focused on properties in disputed areas and do not discriminate on the basis of any users' race, religion, or nationality.  Am. Compl. ¶ 31.

### B.    Plaintiffs' Listings

Plaintiffs are current or prospective users of Airbnb's platform who fall into three groups: (1) Hosts with property in Israeli settlements in the West Bank that are or have been listed on

Airbnb ("Host Plaintiffs")[3]; (2) Guests who have booked properties in Israeli settlements using Airbnb ("Guest Plaintiffs")[4]; and (3) non-users of Airbnb who claim a desire to become users so they can book properties in Israeli settlements through Airbnb ("Prospective Guest Plaintiffs").[5] *Id*. ¶¶ 41–43. All Host Plaintiffs and Guest Plaintiffs are Airbnb members who have agreed to the Airbnb Terms of Service. *See* Miller Decl. ¶¶ 6-9. None of the Prospective Guest Plaintiffs alleges they are members of Airbnb. Am. Compl. ¶¶ 15-19, 43. Plaintiffs do not allege that Airbnb has terminated any of their accounts or listings; nor do Plaintiffs allege that they are unable to list or rent Airbnb listings in the Israeli settlements or anywhere else in the West Bank or in Israel.

Host Plaintiffs allege that "Airbnb's discriminatory policy and practice *now serves* to limit and deny them the ability" to rent their properties, Am. Compl. ¶ 41 (emphasis added), but that is untrue. Guest Plaintiffs likewise claim that "they are *now unable* to [rent listings in settlements in the West Bank] due to Airbnb's discriminatory policy and practice," *id.* ¶ 42 (emphasis added); *see also id.* ¶ 43 (same as to Prospective Guest Plaintiffs), but these allegations are also untrue. Airbnb has not implemented the policy decision it announced on November 19, 2018. Miller Decl. ¶ 11. Airbnb is still assessing how and when to implement the policy in practice, and will implement only after that assessment is complete. *Id.* ¶ 12. All of the Host Plaintiffs' listings remain live on Airbnb's platform and available for bookings. *Id.* And all of the Guest Plaintiffs' user accounts remain active such that they can book properties anywhere in the world, including in Israeli settlement in the West Bank. *Id.* ¶ 13.

---

[3]  Host Plaintiffs are Samuel Silber, Sidney Eddy Strulovits, Sheri Lynn Strulovits, Moshe Gordon, Daniel Jacob, Tsofiya Jacob, Lewis Weinger, Moriyah Shapiro, Jonathan Shapiro, Inbal Nazdare Levy, and Yair Spolter. *Id*. ¶¶ 2-12, 41.

[4]  Guest Plaintiffs are Eric Marx and Susan Lynn Marx. *Id*. ¶ 42.

[5]  Prospective Guest Plaintiffs are Alon Madiel, Danielle Madiel, Gulie Madiel, Howard Rabin, David Tesler, and Jeffrey T. Schwartz. *Id*. ¶ 43.

### C. Plaintiffs' Allegations

Plaintiffs allege that Airbnb's "removal of [Plaintiffs'] listings" in Israeli settlements in the West Bank and prevention of Plaintiffs from using the platform to book such properties, Am. Compl. ¶¶ 37-38, constitute an unlawful "denial of access to, membership and participation in a service relating to the business of renting dwellings" on the basis of race, religion or national origin in violation of the FHA, and an "interference with the rights of persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, or on account of their having aided or encouraged persons in the exercise or enjoyment of[,] rights granted or protected by the FHA," *id.* ¶¶ 45–51 (citing 42 U.S.C. §§ 3606, 3617). Plaintiffs allege Airbnb acted "intentionally, willfully, and in disregard of" their rights under the FHA. *Id.* ¶ 50. They seek declaratory judgment, injunctive relief, and compensatory and punitive damages, as well as costs and attorney's fees. *Id.* at 10.

### ARGUMENT

Plaintiffs bear the burden of establishing the court's jurisdiction, including the ripeness of their claims and their standing to sue. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Princeton Digital Image Corp. v. Office Depot Inc.*, C.A. No. 13-239, 2016 WL 1533697, at *7 (D. Del. Mar. 31, 2016). In adjudicating any challenge for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the Court is not "confined to allegations in the plaintiff's complaint, but [can] consider affidavits, depositions, and testimony." *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997).

To survive a motion to dismiss under Rule 12(b)(6), Plaintiffs must plead facts sufficient to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although well-pleaded allegations must be accepted as true, "a formulaic recitation of the elements of a cause of action will not do," and the Court need not accept any unreasonable

inferences or assume the truth of legal conclusions cast in the form of factual allegations. *Id.* On a Rule 12(b)(6) motion, the court may consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the … claims are based [thereon]," *Mayer v. Belichick,* 605 F.3d 223, 230 (3d Cir. 2010), including a written company policy that is quoted and incorporated by reference in the Amended Complaint, *Kickflip, Inc. v. Facebook*, Inc., 999 F. Supp. 2d 677, 683–84 (D. Del. 2013).

## I.  PLAINTIFFS' CLAIMS FAIL FOR LACK OF SUBJECT MATTER JURISDICTION

### A.  There Is No Subject Matter Jurisdiction Because Airbnb's Policy Has Not Been Implemented And Plaintiffs' Claims Are Therefore Not Ripe

As mentioned, Airbnb has announced a "Disputed Regions Policy," but it has not implemented it in the West Bank.  Airbnb continues to work with experts to develop and validate an implementation plan.  Miller Decl. ¶¶ 11-12.  Plaintiffs' claims thus rest upon "'contingent future events that may not occur as anticipated.'"  *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985).  Despite Plaintiffs' allegations to the contrary, Airbnb has not removed the Host Plaintiffs' properties or stopped any Guest Plaintiffs' bookings pursuant to this policy.  Miller Decl. ¶¶ 11, 13.  Plaintiffs' assertions that listings have been removed and that the policy "now" prevents them from listing or booking accommodation in Israeli settlements, Am. Compl. ¶¶ 37-38, 41-43—and their claims of resulting injury, *id.* ¶ 44, 51—are therefore unfounded and factually incorrect.

In determining ripeness, courts examine "both [1] the fitness of the issues for judicial decision and [2] the hardship to the parties of withholding court consideration."  *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).  Here, Plaintiffs' claims are not "fit for decision."  They are contingent on future decisions by Airbnb about when and how it will implement its policy.  Miller Decl. at ¶ 12.  And

Plaintiffs have not alleged any harm they will suffer pending Airbnb's decisions. The Host Plaintiffs' listings remain live and able to accept bookings, and the Guest Plaintiffs remain able to book properties anywhere, including in the West Bank. *Id.* at ¶¶ 11, 13. Indeed, since the policy announcement, those listings have been booked and continue to be. *Id.* The Court accordingly should decline Plaintiffs' invitation to adjudge an "abstract disagreement" and dismiss the claims as not ripe. *In re Rickel Home Centers, Inc.*, 209 F.3d 291, 307 (3d Cir. 2000).

**B.    There Is No Subject Matter Jurisdiction Because Plaintiffs Can Claim No Injury-In-Fact And Therefore Lack Standing**

Plaintiffs can claim no actual or imminent injury and therefore also lack standing. Article III of the Constitution requires, at a minimum, that the plaintiff suffered an "injury in fact," *i.e.*, the "invasion of a legally protected interest which is (a) *concrete and particularized* and (b) *actual or imminent*, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (emphases added). But as set forth above, Airbnb has not implemented its disputed regions policy in the West Bank. Miller Decl. at ¶ 11. Plaintiffs are still able to list and rent properties in the Israeli settlements in the West Bank. *See supra* at 5-7. Accordingly, it is simply untrue that Plaintiffs have suffered injuries. Their allegations of harm are purely conjectural and hypothetical; and given that Airbnb itself does not have an implementation plan, Plaintiffs cannot credibly claim a concrete and particularized harm that is either actual or sufficiently imminent. *Lujan*, 504 U.S. at 560–61.

Moreover, some Plaintiffs lack standing for the additional reason that they have never actually registered as Airbnb users, much less sought to book any properties in the West Bank. The Prospective Guest Plaintiffs claim only that they "desire to use Airbnb's brokerage and booking services" in the future. Am. Compl. ¶¶ 15–20, 43. They allege no concrete steps they

have taken toward fulfilling their alleged "desire"; thus, even if Airbnb's policy were ever implemented, these Plaintiffs would suffer no "concrete and particularized" injury. "Article III requires more than a desire to vindicate value interests." *Diamond v. Charles*, 476 U.S. 54, 66–67 (1986). "[I]f a plaintiff is required to meet a precondition or follow a certain procedure to engage in an activity or enjoy a benefit and fails to attempt to do so, that plaintiff lacks standing to sue because he or she should have at least taken steps to attempt to satisfy the precondition." *Pucket v. Hot Springs Sch. Dist. No. 23-2*, 526 F.3d 1151, 1161 (8th Cir. 2008); *see also Warth v. Seldin*, 422 U.S. 490, 516–17 (1975); *Gilles v. Davis*, 427 F.3d 197, 208 (3d Cir. 2005). The Prospective Guest Plaintiffs' failure to register as Airbnb users is fatal.

## II. PLAINTIFFS FAIL TO STATE A CLAIM BECAUSE THE FHA DOES NOT APPLY OUTSIDE THE UNITED STATES

The FHA regulates only *domestic* U.S. housing and prohibits discrimination only in the U.S. housing market. *See* 42 U.S.C. § 3601 (the statute specifically concerns "fair housing *throughout the United States*" (emphasis added)). Congress enacted the FHA during the Civil Rights era in response to widespread discrimination in domestic U.S. housing. The FHA says nothing about housing located outside the United States. That explains why the FHA has *never* been applied extraterritorially by any court. Nor should it be applied extraterritorially here, as it would be contrary to the statute's plain language, its legislative history, settled Supreme Court precedent, and public policy.

A fundamental tenet of our legal system is that, in general, "United States law governs domestically but does not rule the world." *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 454-455 (2007). Accordingly, the Supreme Court instructs that, "[a]bsent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application." *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2100 (2016). To overcome

the presumption against extraterritoriality, courts ask whether Congress "affirmatively and unmistakably instruct[ed]" that a statute be applied abroad. *Id.* "When a statute gives no clear indication of an extraterritorial application, it has none." *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 115 (2013) (quoting *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010)).

In the case of the FHA, Congress gave no such indication. To the contrary, the plain language of the FHA makes clear that Congress was focused only on "fair housing throughout the United States," not abroad. 42 U.S.C. § 3601; *see also* 24 C.F.R. § 100.5 (same); *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 135 S. Ct. 2507, 2521 (2015) (explaining that Congress enacted the FHA "to eradicate discriminatory practices within a sector of our Nation's economy"). The FHA was intended to remedy "the heightened racial tensions and riots erupting in the United States throughout the 1960s"; it "reflected an understanding that 'fair housing legislation' was 'the best way for Congress' at that time 'to start on the true road to integration'" of American communities. *Nat'l Fair Hous. All. v. Carson*, 330 F. Supp. 3d 14, 24 (D.D.C. 2018) (quoting 114 Cong. Rec. at 3421, 3422 (statement of Sen. Mondale)). The FHA does not contain a single reference to foreign housing or to discrimination outside the United States. Nor does it provide any "affirmative[]" and "unmistakabl[e]" instruction by Congress to give it extraterritorial effect. *See RJR Nabisco, Inc.*, 136 S. Ct. at 2100.

Courts have consistently held that similar civil rights laws—which, like the FHA, were intended to remedy historical patterns of discrimination in the United States—do not apply outside the United States, even when the parties involved are American. In *E.E.O.C. v. Arabian Am. Oil Co.*, 499 U.S. 244, 255 (1991) ("*Aramco*"), the Supreme Court explained that the text of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, which prohibits certain forms of employment discrimination, evinced a "purely domestic focus," and excluded a U.S.

citizen's claim that a Delaware corporation that hired him in Texas, where it had its principal

place of business, discriminated against him in Saudi Arabia.[6]  The Court observed that, like the

FHA, Title VII's text "[f]ails even to mention foreign nations or foreign proceedings."  *Aramco*,

499 U.S. at 256.  Moreover, like the FHA, Title VII "indicates a concern that [Title VII] not

unduly interfere with the sovereignty and laws of the [fifty U.S.] States" by protecting the U.S.

States' laws not inconsistent with Title VII's purposes from preemption, but was silent about

"conflicts with foreign laws and procedures."  *Compare id.* at 255–56 (citing 42 U.S.C. § 2000h–

4), *and* 42 U.S.C. § 3615, *with* 29 U.S.C. § 623(f)(1) (immunizing under Age Discrimination in

Employment Act ("ADEA") conduct in a foreign country that would be unlawful under ADEA,

if compliance with ADEA would cause employer to violate laws of that country).

Similarly, in *Ofori-Tenkorang v. Am. Int'l Group, Inc.*, 460 F.3d 296 (2d Cir. 2006), the

Second Circuit held that the Civil Rights Act of 1966, 42 U.S.C. § 1981, has no extraterritorial

application.  *See also Marshall v. Exelis Sys. Corp.*, No. 13-cv-00545-CMA-KMT, 2014 WL

1213473, at *9 (D. Colo. Mar. 24, 2014).  The court relied on language similar to the FHA's

reference to "fair housing throughout the United States," 42 U.S.C. § 3601, holding that "[t]he

plain text of Section 1981 manifests Congress's intent to confer [rights] on 'persons *within* the

jurisdiction of the United States.'"  *Ofori-Tenkorang*, 460 F.3d at 301 (quoting 42 U.S.C. §

1981(a)) (emphasis in original).  The Equal Pay Act, 29 U.S.C. § 206(d), which prohibits an

employer from discriminating between employees on the basis of sex, has also been held not to

apply extraterritorially.  *See Hart v. Dresdner Kleinwort Wasserstein Secs., LLC*, No. 06 Civ.

0134 (DAB), 2006 WL 2356157, at *6 (S.D.N.Y. Aug. 9, 2006).

---

[6]     The *Aramco* decision is especially instructive in interpreting the FHA, since "[t]he FHA,
like Title VII … was enacted to eradicate discriminatory practices *within a sector of our Nation's
economy*."  *Inclusive Cmtys. Project, Inc.*, 135 S. Ct. at 2521 (emphasis added).

The case for applying a statute only in the United States is even stronger for the FHA than it is for Title VII, Section 1981, or the Equal Pay Act: housing, unlike employment, is by its nature tied to geography. *Cf. Howard v. Maximus, Inc.*, No. 3:13-cv-01111-ST, 2013 WL 7155010, at *3 (D. Or. Nov. 20, 2013) (explaining that Section 1983's reference to civil rights violations "under color of" the law of any U.S. State or territory excluded violations committed in foreign countries). Accordingly, courts have never applied the FHA outside the United States.

When Congress intends civil rights legislation to apply outside the United States, it says so expressly. *Ofori-Tenkorang*, 460 F.3d at 302–03. Following the Supreme Court's decision in *Aramco*, Congress amended Title VII to expressly provide that it governed discrimination claims by U.S. citizens working outside the United States. *See* Civil Rights Act of 1991, Pub. L. No. 102–166, 105 Stat. 1071, 1077; *see also* 29 U.S.C. § 630(f) (amending term "employee" in ADEA to include "any individual who is a citizen of the United States employed by an employer in a workplace in a foreign country"); 42 U.S.C. §12111(4) (same as to Americans with Disabilities Act). The FHA has never been amended to add such language.

Nor is it relevant that Plaintiffs are U.S. nationals and some Plaintiffs reside in the United States. The alleged housing discrimination occurred (or would occur), if at all, only outside the United States. *See*, *e.g.*, Am. Compl. ¶¶ 37-38 (basing claims on Airbnb's allegedly discriminatory "removal of listings 'in Israeli settlements in the occupied West Bank'"). Once a court determines that a statute has no extraterritorial effect, it may conclude that a claim "involve[s] a permissible *domestic* application" of the statute only if "the conduct relevant to the statute's *focus* occurred in the United States." *RJR Nabisco*, 136 S. Ct. at 2100–01. It is insufficient that "*some* domestic activity is involved." *Morrison*, 561 U.S. at 266–67. In *Morrison*, the Supreme Court explained that because the "transactions that the [Securities

Exchange Act of 1934] seeks to 'regulate'" are securities trades themselves, not the deceptive statements made to induce those trades, plaintiffs who were misled in the United States into trading on an overseas exchange lacked a cause of action. *Id.* (relying on Exchange Act's prologue's stated goal of "provid[ing] for the regulation of securities exchanges"). Similarly, the Supreme Court explained that the "focus" of congressional concern in Title VII was "domestic employment," and accordingly neither the plaintiff's U.S. citizenship nor the fact that he was hired in the United States made the claim domestic. *Id.* at 266 (citing *Aramco*, 499 U.S. at 255).

Like Title VII before its amendment, the "focus" of Congress's concern in the FHA is to achieve "fair housing throughout the United States," 42 U.S.C. § 3601, and the statute's prohibition of discrimination in the sale or rental of, and provision of lending and brokerage services for, "dwellings," *id.* §§ 3604–3606, must be understood in that context. It is irrelevant that Plaintiffs are U.S. nationals or that some Plaintiffs live in the United States, because the "housing" or "dwellings" that Plaintiffs allege they were discriminatorily denied an opportunity either to rent to others, Am. Compl. ¶¶ 2–12, or to stay in as a guest, *id.* ¶¶ 13–20, are outside the United States. Plaintiffs' claims rest on an impermissible extraterritorial application of the FHA and should therefore be dismissed.

## III. PLAINTIFFS FAIL TO STATE A CLAIM BECAUSE THE FHA DOES NOT APPLY TO TEMPORARY VACATION RENTALS

The FHA provisions upon which Plaintiffs base their claims require them to allege and establish that they suffered discrimination in connection with specially-defined "dwellings," 42 U.S.C. §§ 3606, 3617. A "dwelling" is not just any building; it must be "occupied as, or designed or intended for occupancy as, *a residence by one or more families*." 42 U.S.C. § 3602(b) (emphasis added). To determine whether a building is such a "residence" and thus a "dwelling," the Third Circuit applies a two-step test: (1) the structure must be "intended or

designed for occupants *who intend to remain in the facility for any significant period of time*," and (2) "those occupants [*must*] *view the facility as a place to return to during that period*"—in other words, they must view the place as their home. *Lakeside Resort Enters., LP v. Bd. of Sup'rs of Palmyra Twp.*, 455 F.3d 154, 158–59 (3d Cir. 2006) (emphases added). Here, Plaintiffs make no such allegations; rather, they offer only the conclusory assertion that their listings are "dwellings." Am. Compl. ¶ 47. Such unadorned "legal conclusion[s]" need not be accepted as true on a motion to dismiss, *Iqbal*, 556 U.S. at 678, and Plaintiffs offer no additional facts to show that their properties are, in fact, dwellings for purposes of the FHA.

Moreover, what Plaintiffs *do* allege—that U.S.-domiciled Plaintiffs (all of whom allegedly are U.S. citizens) use Airbnb to "book" listings when they visit the West Bank—demonstrates the insufficiency of their pleading. Under the Third Circuit's test, hotels, motels, bed and breakfasts, and other such vacation properties do not constitute dwellings under the FHA, since their visitors are "transient" and "do not see those places as their homes." *Lakeside Resort*, 455 F.3d at 159 n.11; *see also Schneider v. Cty. of Will, State of Ill.*, 190 F. Supp. 2d 1082, 1087 (N.D. Ill. 2002) (bed and breakfast does not fit within FHA's definition of dwelling); *Villegas v. Sandy Farms, Inc.*, 929 F. Supp. 1324, 1327–28 (D. Or. 1996) ("The FHA does not apply, however, to lodging for transient guests such as hotels."); *Moore v. Red Roof Inn*, CIV. A. No. HAR 87-2134, 1989 WL 85364, at *2 (D. Md. July 27, 1989); *Patel v. Holley House Motel*, 483 F. Supp. 374, 381 (S.D. Al. 1979) (motel is an establishment that provides lodging to "transient" guests and is not a dwelling). Plaintiffs' claims cannot survive based on mere conclusory statements and Plaintiffs' own allegations make clear that their vacation and short-term rental properties are not covered long-term residences, *i.e.*, "dwellings," within the meaning of the FHA.

**IV.    PLAINTIFFS FAIL TO STATE A CLAIM BECAUSE THEY DO NOT PLAUSIBLY ALLEGE THAT AIRBNB'S POLICY CONSTITUTES UNLAWFUL DISCRIMINATION**

Plaintiffs allege Airbnb violated Section 806 of the FHA, which prohibits certain discrimination in relation to covered dwellings.  42 U.S.C. §§ 3606, 3617.  *See* Am. Compl. ¶¶ 48–49.  In order to allege a *prima facie* case under the FHA, Plaintiffs must plead facts sufficient to show either (1) intentionally disparate treatment; or (2) disparate impact.  *Mt. Holly Gardens Citizens in Action, Inc. v. Twp. of Mount Holly*, 658 F.3d 375, 381 (3d Cir. 2011).  The Amended Complaint does neither, and therefore should be dismissed.

*First*, to the extent Plaintiffs intend to allege a disparate treatment claim, their Amended Complaint falls woefully short of the applicable pleading standard.  To plead such a claim, Plaintiffs must show "that a discriminatory purpose was a 'motivating factor' behind the challenged action, or that a contested regulation facially discriminates on the basis of the plaintiff's protected trait.  *Cmty. Servs., Inc. v. Heidelberg Twp.*, 439 F. Supp. 2d 380, 396 (M.D. Pa. 2006).  Plaintiffs have not alleged facts sufficient to satisfy either requirement.

Apart from a conclusory assertion that Airbnb acted "intentionally," Am. Compl. ¶ 50, which merely parrots the legal standard, Plaintiffs do not allege any facts to support a theory that Airbnb's Policy Statement was motivated by an improper discriminatory purpose.  The Amended Complaint claims that Airbnb was aware that the listings at issue are "owned predominately, if not exclusively, by Jews and/or Israelis."  *Id.* ¶ 35.  But disparate treatment requires "treating a person differently *because of* his race," meaning Plaintiffs must plead and show *both* "consciousness of race, and a purpose to use race as a decision-making tool."  *Vill. of Bellwood v. Dwivedi*, 895 F.2d 1521, 1529–30 (7th Cir. 1990) (emphasis added) (citing *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)); *see also Palencar v. Cobler Realty Advisors*, Civ. A. No. 3:CV-09-0325, 2009 WL 10184843, at *7 (M.D. Pa. Apr. 17,

2009).  The Amended Complaint is utterly devoid of any allegations to that effect.  Plaintiffs

offer only their speculation, made "[u]pon information and belief," that Airbnb's policy was

designed to placate supporters of the BDS movement.  Am. Compl. ¶ 36.  Such unsupported,

conclusory allegations are plainly not enough, especially where—as here—Plaintiffs fail to

allege "specific facts upon which the belief is reasonably based."  *ICU Med., Inc. v. RyMed*

*Techs., Inc.*, 752 F. Supp. 2d 486, 497 (D. Del. 2010).

Plaintiffs additionally assert that Airbnb's Policy Statement discriminates against them on

the basis of their Jewish faith or Israeli national origin, but do not show that the policy is facially

discriminatory.  On its face, Airbnb's policy simply provides that Airbnb will "remove listings in

Israeli settlements in the occupied West Bank," Am. Compl. ¶ 34—a designation of place that is

silent about the identity, race, or national origin of either the affected Hosts or prospective

Guests.  The policy applies to "the approximately 200 Airbnb listings in Israeli settlements in the

West Bank," regardless of the race, religion, or national origin of their owners.  Policy

Statement.  And Plaintiffs allege no other discriminatory treatment:  They do not assert, for

instance, that they are prevented from joining Airbnb, that their Airbnb memberships were or

will be cancelled or revoked, that they were prevented from renting any Airbnb listings outside

of the territory in question, or that they were prevented from listing any properties outside of the

territory in question.  Nor do they allege that non-Jews or non-Israelis have been permitted to list

or rent properties in the territory in question or that they have otherwise received different access

or services on Airbnb's platform.  In fact, nothing in Airbnb's Policy Statement bars the Host

Plaintiffs from listing, or the Guest Plaintiffs from renting, accommodations anywhere outside

Israeli settlements in the West Bank, including in Israel, the Golan Heights, and East

Jerusalem—and globally beyond this region.  Plaintiffs' intentional discrimination claims accordingly should be dismissed.

*Second*, Plaintiffs do not plead any disparate impact claim.  Plaintiffs allege that Jews and Israelis who own residential property in West Bank settlements may be disproportionately affected by Airbnb's policy, Am. Compl. ¶ 35, but are silent about the fact that, at least according to their own allegations, the policy has had an equal or greater impact on U.S. citizens in this instance; whereas all 19 Plaintiffs claim to be U.S. citizens, only 14 claim to be Israeli citizens.  Am. Compl. ¶¶ 2–20.  Plaintiffs also ignore that Airbnb's policy, if implemented, would prevent all users—irrespective of race, religion, or national origin—from listing or renting properties in the Israeli settlements in the West Bank.

More importantly, even if Plaintiffs could allege a disparate impact—which they cannot—the policy would be permissible because it is necessary to achieve multiple legitimate and nondiscriminatory interests.  *E.g.*, *Fair Hous. Rights Ctr. in Se. Penn. v. Morgan Props. Mgmt. Co., LLC*, Civ. A. No. 16-4677, 2018 WL 3208159, at *10 (E.D. Pa. June 29, 2018). Airbnb's decision to remove listings in Israeli settlements was intended not to discriminate, but to grapple with the question of how best to offer its platform and services in a disputed area while remaining neutral and seeking to further its mission of belonging anywhere.  Moreover, the company continues to work with a range of experts and stakeholders to review the Disputed Regions Policy framework and its application in Israeli settlements in the West Bank, including when and how to implement the announced policy.  *Supra* at 4-5.  As the Supreme Court has explained, "[j]ust as an employer may maintain a workplace requirement that causes a disparate impact if that requirement is a 'reasonable measure[ment] of job performance,' so too must housing authorities and private developers be allowed to maintain a policy if they can prove it is

necessary to achieve a valid interest." *Inclusive Cmtys. Project, Inc.*, 135 S. Ct. at 2522–23 (citation omitted). Here, Airbnb had an interest in navigating a difficult political situation, consistent with the company's values.

## V. PLAINTIFFS' CLAIMS ARE PRECLUDED BY THE FIRST AMENDMENT AND SECTION 230 OF THE COMMUNICATIONS DECENCY ACT

Finally, Plaintiffs' claims should be dismissed because Airbnb's policy is protected by the First Amendment and Airbnb is immune under Section 230 of the Communications Decency Act ("CDA"). In its Policy Statement, Airbnb took the public position that "Israeli settlements in the occupied West Bank … are at the core of the dispute between Israelis and Palestinians," and that it viewed permitting users to list property in those settlements on its platform as potentially exacerbating the conflict—a communication at the heart of the "core political speech" protected by the First Amendment, *Meyer v. Grant*, 486 U.S. 414, 422 (1988). Plaintiffs disagree with that statement, and seek to punish Airbnb for its protected expression. But the First Amendment protects Airbnb's choice, as the private publisher of a website, of what material to publish, as well as its decisions regarding "public issues" that—"whether fair or unfair—constitute the exercise of editorial control and judgment." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 575 (1995). Airbnb cannot be compelled to endorse a political position or convey a message it considers objectionable. *Id.* at 569-70 (a private speaker "does not forfeit constitutional protection simply by combining multifarious voices").

Moreover, CDA Section 230 would protect Airbnb's removal of content—such as listings in disputed regions—that it determines to be objectionable. That provision shields a "provider … of an interactive computer service" from civil liability for "any action voluntarily taken in good faith to restrict access to or availability of material *that the provider … considers to be …*

*objectionable*, whether or not such material is constitutionally protected." 47 U.S.C. § 230(c)(2)

(emphasis added); *see also Green v. Am. Online (AOL)*, 318 F.3d 465, 472 (3d Cir. 2003).

District courts, including those in this Circuit, have recognized that Section 230(c)(2)

empowers service providers to remove a wide range of "objectionable" material voluntarily and

without fear of repercussion. For instance, in *Langdon v. Google, Inc.*, this Court held that

search engines were immune from liability for removing advertisements promoting the plaintiff's

websites, which purportedly exposed fraud perpetrated by North Carolina government officials

and atrocities by the Chinese government. 474 F. Supp. 2d 622, 631 (D. Del. 2007). Similarly,

in *Smith v. Trusted Universal Standards*, the court explained that Comcast could restrict spam

under Section 230's "otherwise objectionable" category, even though it was not "patently

offensive." Civ. No. 09-4567 (RBK/KMW), 2010 WL 1799456 (D.N.J. May 4, 2010). *See also*

*Blumenthal v. Drudge*, 992 F. Supp. 44, 52 (D.D.C. 1998).

As the Policy Statement explained, Airbnb decided to remove listings in Israeli

settlements after determining that they were "at the core of the [territorial] dispute between

Israelis and Palestinians," and in response to concerns of many Airbnb users that "companies

should not profit on lands where people have been displaced." Policy Statement. Airbnb thus

made the business judgment to publicly adopt a policy—and to publicly express its rationale for

that policy—in a good-faith, well-intentioned effort to remain neutral in an international

territorial dispute, while continuing to promote its mission of belonging anywhere. *Supra* at 4-5.

Under these circumstances, Airbnb's policy determination to remove "objectionable" content in

the form of property listings in settlements in the West Bank is protected under Section

230(c)(2).

## CONCLUSION

For all these reasons, Airbnb respectfully requests dismissal of the Amended Complaint.

Dated:  January 29, 2019

YOUNG CONAWAY STARGATT &
    TAYLOR, LLP

OF COUNSEL:

Jamie Gorelick
David W. Bowker
Benjamin Chapin
Leon T. Kenworthy
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue
Washington, DC 20006
Tel: (202) 663-6000
Jamie.Gorelick@wilmerhale.com
David.Bowker@wilmerhale.com
Benjamin.Chapin@wilmerhale.com
Leon.Kenworthy@wilmerhale.com

*/s/ Adam W. Poff*
C. Barr Flinn (No. 4092)
Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Tel: (302) 571-6600
bflinn@ycst.com
apoff@ycst.com
rvrana@ycst.com

## CERTIFICATE OF SERVICE

I, Adam W. Poff, Esquire, hereby certify that on January 29, 2019, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to registered participants.

I further certify that on January 29, 2019, I caused the foregoing document to be served by e-mail on the following counsel of record:

> David S. Eagle
> Sean M. Brennecke
> KLEHR HARRISON HARVEY
> BRANZBURG LLP
> 919 Market Street, Suite 1000
> Wilmington, Delaware 19801
> deagle@klehr.com
> sbrennecke@klehr.com
>
> Robert J. Tolchin
> THE BERKMAN LAW OFFICE, LLC
> 111 Livingston Street, Suite 1928
> Brooklyn, New York 11201
> rtolchin@berkmanlaw.com
>
> *Attorneys for Plaintiffs*
>
> Nitsana Darshan-Leitner, Adv.
> NITSANA DARSHAN-LEITNER & CO.
> 11 Havatikim Street
> Petah Tikva, Israel 49389
> nitsanaleitner@gmail.com
>
> *Israeli Counsel for Plaintiffs*

YOUNG CONAWAY STARGATT & TAYLOR, LLP

<u>*/s/ Adam W. Poff*</u>
C. Barr Flinn (No. 4092)
Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, Delaware 19807
Tel: (302) 571-6642
bflinn@ycst.com
apoff@ycst.com
rvrana@ycst.com

*Attorneys for Defendant Airbnb, Inc.*

2