## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SAMUEL SILBER; SIDNEY EDDY
STRULOVITS; SHERI LYNN
STRULOVITS; MOSHE GORDON;
DANIEL JACOB; TSOFIYA JACOB;
LEWIS WEINGER; MORIYAH
SHAPIRO; JONATHAN SHAPIRO;
INBAL NAZDARE LEVY; YAIR
SPOLTER; ERIC CHARLES MARX;
SUSAN LYNN MARX; ALON MADIEL;
DANIELLE MADIEL; GULIE MADIEL;
HOWARD RABIN; JEFFREY T.
SCHWARTZ; and DAVID TESLER,

             *Plaintiffs*,

    v.

AIRBNB, Inc.,

             *Defendant*.

C.A. No. 1:18-cv-01884-RGA

**Oral Argument Requested**

## MOTION TO INTERVENE ON BEHALF OF PUTATIVE INTERVENORS AND COUNTERCLAIM PLAINTIFFS ZIAD ALWAN, VILLAGE OF JALUD, MUNICIPALITY OF 'ANATA, AND RANDA WAHBE AND MEMORANDUM OF LAW IN SUPPORT

Misty A. Seemans, DE Bar # 5975
O.P.D. (Pro Bono; cooperating attorney
with Center for Constitutional Rights)
820 North French Street
Third Floor
Wilmington, Delaware 19801
mseemans@ccrjustice.org
(302) 577-5126

Diala Shamas (*pro hac vice* motion pending)
Maria LaHood (*pro hac vice* motion pending)
Katherine Gallagher (*pro hac vice* motion pending)
Astha Sharma Pokharel (*pro hac vice* motion pending)
Baher Azmy (*pro hac vice* motion pending)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
dshamas@ccrjustice.org
(212) 614-6426

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................................ 3

   I.   ILLEGAL AND DISCRIMINATORY NATURE OF SETTLEMENTS INCLUDING
        PROPERTIES LISTED BY SETTLER-PLAINTIFFS ...................................................... 3

   II.  AIRBNB'S DECISION TO DELIST SETTLEMENT PROPERTIES AND
        PLAINTIFFS' LAWSUIT ................................................................................................. 5

   III. BACKGROUND ON PALESTINIAN INTERVENORS .................................................. 5

ARGUMENT .................................................................................................................................. 6

   I.   INTERVENORS SHOULD BE GRANTED INTERVENTION AS OF RIGHT ............. 8

        A.  Intervenors' Motion is Timely. ...................................................................................... 8

        B.  Intervenors Have a Sufficient Interest in this Litigation. ............................................. 8

        C.  Intervenors' Interests May Be Practically Impaired by the Disposition of this
            Litigation. .................................................................................................................... 12

        D.  Intervenors' Interests Are Not Adequately Represented by Airbnb. ......................... 15

   II.  THIS COURT SHOULD EXERCISE ITS DISCRETION TO GRANT
        PERMISSIVE INTERVENTION .................................................................................... 16

CONCLUSION ............................................................................................................................. 16

# TABLE OF AUTHORITIES

## Cases

*Am. Farm Bureau Fed'n v. U.S. Envtl. Prot. Agency*
    278 F.R.D. 98 (M.D. Pa. 2011) ................................................................ 12

*Benjamin ex rel. Yock v. Dep't of Pub. Welfare*,
    701 F.3d 938 (3d Cir. 2012) ....................................................... 7, 8, 12

*Brody ex rel. Sugzdinis v. Spang*,
    957 F.2d 1108 (3d Cir. 1992) .................................................. 9, 12, 15

*Brumfield v. Dodd*,
    749 F.3d 339 (5th Cir. 2014) ................................................................ 12

*Donaldson v. United States*,
    400 U.S. 517 (1971) ............................................................................... 8

*Fleer Corp. v. Topps Chewing Gum, Inc.*,
    539 A.2d 1060 (Del. 1988) ................................................................... 13

*Foster v. Gueory*,
    655 F.2d 1319 (D.C. Cir. 1981) ................................................... 9, 10, 11

*Grutter v. Bollinger*,
    188 F.3d 394 (6th Cir. 1999) ................................................................ 12

*Harris v. Pernsley*,
    820 F.2d 592 (3d Cir. 1987) ......................................................... 8, 9, 12

*Kleissler v. U.S. Forest Serv.*,
    157 F.3d 964 (3d Cir. 1998) ............................................................. 7, 14

*Mille Lacs Band of Chippewa Indians v. Minnesota*,
    989 F.2d 994 (8th Cir. 1993) ................................................................. 9

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*,
    72 F.3d 361 (3d Cir. 1995) ................................................................. 8, 9

*Oneida Indian Nation of N. Y. v. New York*,
    201 F.R.D. 64 (N.D.N.Y. 2001) ............................................................. 9

*Seneca Res. Corp. v. Twp. of Highland, Elk Cnty., Pennsylvania*,
    863 F.3d 245 (3d Cir. 2017) ................................................................ 12

*United States v. Territory of Virgin Islands*,
748 F.3d 514 (3d Cir. 2014) ................................................................................................. 16

**Statutes**

Fair Housing Act, 42 U.S.C. § 3601 et seq. .................................................................. 2, 11, 14, 15

**Other Authorities**

Geneva Convention Relative to the Protection of Civilian Persons in Time of War (Fourth
Geneva Convention), Aug. 12, 1949, 75 U.N.T.S. 287, *available at* https://ihl-
databases.icrc.org/applic/ihl/ihl.nsf/Treaty.xsp?action=openDocument&documentId=
AE2D398352C5B028C12563CD002D6B5C ............................................................................. 3

**Rules**

Fed. R. Civ. P. 24(a) ........................................................................................................... 1, 6, 7

Fed. R. Civ. P. 24(b) ........................................................................................................... 1, 7, 16

## PRELIMINARY STATEMENT

Mr. Ziad Alwan, the village of Jalud represented by the Village Council of Jalud, the town of 'Anata represented by the Municipality of 'Anata, and Ms. Randa Wahbe ("Intervenors") move to intervene as defendants as of right pursuant to Fed. R. Civ. P. 24(a)(2) or, alternatively, for permissive intervention under Fed. R. Civ. P. 24(b)(1). Palestinian Intervenors Alwan, the village of Jalud and the town of 'Anata seek to intervene in order to protect their property and legal interests that are directly at issue in this lawsuit, which cannot be sufficiently protected by Defendant Airbnb. Specifically, their property has been and continues to be unlawfully seized, appropriated, claimed, and/or controlled by Plaintiffs Levy, Moriyah and Jonathan Shapiro, Gordon, and Daniel and Tsofiya Jacob in violation of domestic and international law. Additionally, the rental properties that Settler-Plaintiffs Silber, Sidney Eddy and Sheri Lynn Strulovits, Gordon, Daniel and Tsofiya Jacob, Weinger, Moriyah and Jonathan Shapiro, Levy, and Spolter ("Settler-Plaintiffs") list or seek to list are made available under conditions of discrimination and are advertised in a manner that is discriminatory on the basis of national origin and religion, which impairs all Intervenors' interests in ensuring that Palestinians, including Intervenors themselves, are free from discrimination.

Settler-Plaintiffs filed this action seeking an order permitting them to continue to list properties on Airbnb that are located on Intervenors' land, by (incorrectly) asserting ownership over those properties (Intervenor-Defendants' Answer to Amended Complaint and Counterclaims, Counterclaims, attached hereto as Exhibit A ("Intervenors' Countercl."), at ¶¶ 1-2) and using them for their exclusive—and unjust—economic enrichment. Specifically, Settler-Plaintiffs assert that Airbnb's decision to delist settler properties on its platform—which is supported by international legal norms that render Israeli settlements on occupied Palestinian

1

territory unlawful—discriminates against Settler-Plaintiffs. Compl., D.I. 1, at ¶ 39; Am. Compl., D.I. 6, at ¶ 40. Yet, it is Settler-Plaintiffs that discriminate against Intervenors and Palestinians, as they are prohibited from accessing the settlements upon which the rental properties lie on account of their national origin and religion.  Intervenors' Countercl. at ¶¶ 50-55. As such, contrary to their own false claim of discrimination, Settler-Plaintiffs' listing of the rental properties indicate discrimination, in violation of the Fair Housing Act, 42 U.S.C. § 3601 et seq., specifically § 3604(c).  Additionally, as detailed in the accompanying Intervenors' Answer and Counterclaims, Settler-Plaintiffs bear responsibility under international law for their own role in the unlawful Israeli state project to seize, control, and occupy Palestinian land for Israeli settlements. Intervenors' Countercl. at ¶ 1 et seq.

Intervenors have a cognizable interest in preventing Settler-Plaintiffs Levy, Moriyah and Jonathan Shapiro, Gordon, and Daniel and Tsofiya Jacob's continued unjust enrichment from Palestinian Intervenors' land and in contesting a possible judicial ratification of the ongoing illegal dispossession of Palestinian Intervenors from their land that may flow from a judgment in Settler-Plaintiffs' favor.  Palestinian Intervenors, who themselves are discriminatorily excluded from all Settler-Plaintiffs' rental properties, also have a unique interest in preventing a judicial determination that Airbnb's decision to delist settlement properties is itself discriminatory, and a further interest in preventing Settler-Plaintiffs' continued posting of discriminatory rental property advertisements.  Intervenors should not be sidelined from this dispute over their land and rights. A case which so deeply implicates Palestinian Intervenors' interests in property, adjudication of their rights, and justice should not proceed without their participation. This Court should grant Intervenors' timely Motion to Intervene.

## FACTUAL BACKGROUND

Settler-Plaintiffs list or seek to list Airbnb properties located in Israeli settlements in the occupied Palestinian territory of the West Bank. Intervenors' Countercl. at ¶¶ 82-130. Settler-Plaintiffs Levy, Moriyah and Jonathan Shapiro, Gordon, and Daniel and Tsofiya Jacob have unlawfully appropriated, claimed, and/or occupied the properties they list on Airbnb, which belong to Intervenors Alwan, Jalud, and 'Anata. *Id*. at ¶¶ 82-84; 101-107; 116-124. By listing settlement properties on Airbnb's platform, those Settler-Plaintiffs seek to further profit from land that they have unlawfully acquired. Additionally, all Settler-Plaintiffs' listings are discriminatory, and they maintain access to their properties under discriminatory and unlawful conditions. *Id*. at ¶¶ 168-174.

### I.      ILLEGAL AND DISCRIMINATORY NATURE OF SETTLEMENTS INCLUDING PROPERTIES LISTED BY SETTLER-PLAINTIFFS.

The properties that Settler-Plaintiffs have listed or seek to list on Airbnb's platform are in illegally established and maintained Jewish Israeli settlements that are built on Palestinian land in territory that Israel has occupied since 1967. *Id*. at ¶¶ 82-130. As detailed in Intervenors' Counterclaims, the establishment of settlements is unlawful under international law, including the 1949 Geneva Conventions. *Id*. at ¶¶ 22-38. The settlement enterprise is central to Israel's policy to annex the Palestinian territory it seized in 1967, in violation of the general principle of law prohibiting the acquisition of territory by force. *Id*. at ¶¶ 24-26; 47; *see also* Geneva Convention Relative to the Protection of Civilian Persons in Time of War (Fourth Geneva Convention), Aug. 12, 1949, 75 U.N.T.S. 287, *available at* https://ihl-databases.icrc.org/applic/ihl/ihl.nsf/Treaty.xsp?action=openDocument&documentId=AE2D3983 52C5B028C12563CD002D6B5C. The Israeli tourism industry plays a significant role in the settlement enterprise.  Intervenors' Countercl. at ¶¶ 74-75.

3

As detailed in Intervenors' Counterclaims, the rental properties that Settler-Plaintiffs list or seek to list are in settlements that are inherently discriminatory, and Settler-Plaintiffs make them available to guests under discriminatory conditions. *Id*. at ¶¶50-58. Israeli settlements are explicitly for the benefit of Jewish individuals, whether they are from Israel or from anywhere in the world. *Id*. at ¶¶ 43-44. Palestinians with West Bank residency, including Intervenors, are not even allowed to access settlements or the boundaries around them, which Israel has declared a closed military zone by military order, and they could be prosecuted for doing so. *Id*. at ¶¶ 50-53. The rental properties at issue in this litigation are in this closed military zone, and part of a much broader system of closures and restrictions that severely restrict Palestinians' ability to move freely and safely in the West Bank. *Id*. Palestinian residents of the West Bank may only enter settlements as laborers if they bear special permits. *Id*. Therefore, Intervenors are both physically and legally prohibited from accessing the listed properties.

As detailed in the Intervenors' Counterclaims, Settler-Plaintiffs' advertisements indicate discrimination on the basis of national origin and religion. *Id*. at ¶ 168-174. All Settler-Plaintiffs' advertisements of the rental properties name the Israeli settlement that the property is located in. *Id*. Palestinian access to all of these settlements is restricted. *Id*. at ¶¶ 50-53. Some of the Settler-Plaintiffs' Airbnb posts explicitly evidence this discriminatory reality, especially when read and understood in the context of the settlement enterprise. For example, Settler-Plaintiff Moriyah Shapiro indicates in her Airbnb advertisement that the property is in a "special neighborhood of Shiloh called Adei-Ad." *Id*. at ¶ 57. She indicates that "Adei-Ad is a Jewish, very religious neighborhood" and "our neighborhood is Jewish religious." *Id*. Settler-Plaintiff Moriyah Shapiro has also indicated in her advertisement on Airbnb that "croses [sic] are forbidden" on the property. *Id*. Settler-Plaintiff Yair Spolter indicates in his Airbnb advertisement that the property

is in Modi'in Illit which "is a religious Jewish city in the center of Israel." *Id.* at ¶ 172. These statements indicate explicitly that the Airbnb properties are located in Israeli settlements, where Palestinian residents of the West Bank, including Intervenors, are not allowed to enter.

## II.        AIRBNB'S DECISION TO DELIST SETTLEMENT PROPERTIES AND PLAINTIFFS' LAWSUIT.

On November 19, 2018, Airbnb announced that it had developed a framework for evaluating how it should treat listings in occupied territories, and concluded that it "should remove listings in Israeli settlements in the occupied West Bank [except East Jerusalem] that are at the core of the dispute between Israelis and Palestinians."[1]  These listings include the properties that Settler-Plaintiffs claim to own. On January 17, 2019, Airbnb announced that, in applying its framework, it would further de-list properties in South Ossetia and Abkhazia.[2] On November 28, 2018, Plaintiffs filed this lawsuit claiming that "Airbnb's decision to delist [settlement properties] discriminates against Jews and/or Israelis" because settlement properties are "owned predominately, if not exclusively by Jews and/or Israelis." Compl. at ¶ 39; Am. Compl. at ¶ 35.

## III.       BACKGROUND ON PALESTINIAN INTERVENORS.

Ziad Alwan is a Palestinian and a United States Citizen who resides in Chicago, Illinois, and whose family is from Ein Yabrud, a Palestinian village located in the outskirts of Ramallah in the West Bank, Palestine. Intervenors' Countercl. at ¶ 101. He is heir to his father's land which was illegally seized by the State of Israel for the purposes of the construction of the Ofra settlement. *Id.* at ¶ 102. His family's ownership is evidenced by official registration documents.

---

[1] *Listings in Disputed Regions*, AIRBNB.COM (Nov. 19, 2018), https://press.airbnb.com/listings-in-disputed-regions/.
[2] *Framework for Evaluating Listings in Disputed Areas*, AIRBNB.COM (Jan. 17, 2019), https://press.airbnb.com/framework-for-evaluating-listings-in-disputed-areas/.

*Id*. at ¶ 103 The rental property that Settler-Plaintiff Inbal Levy claims to own and lists on Airbnb's platform is partially built on Intervenor Alwan's land. *Id*. at ¶¶ 103-107. Settler-Plaintiffs' listings discriminate against Intervenor Alwan on account of his national origin and Muslim religion. *Id*. at ¶¶ 114-115.

The Palestinian village of Jalud is located in the Nablus area in the West Bank, Palestine. *Id*. at ¶ 82. The village is the rightful claimant of the land upon which the settlement outpost of Adei Ad was established. *Id*. at ¶¶ 83-84. The house that Settler-Plaintiffs Moriyah and Jonathan Shapiro have illegally built, which Moriyah Shapiro lists on Airbnb's site and claims to own, is located on Jalud's land. *Id*.

The Palestinian town of 'Anata is located in the outskirts of East Jerusalem in the West Bank, Palestine. *Id*. at ¶ 116. The rental properties that Settler-Plaintiffs Gordon and Daniel and Tsofiya Jacob claim to own and which Settler-Plaintiffs Gordon and Tsofiya Jacob list on Airbnb's platform are located on 'Anata's land. *Id*. at ¶¶ 118-124.

Randa Wahbe is a Palestinian and United States citizen, and resident of the West Bank and Somerville, Massachusetts, where she is completing her doctorate in Anthropology at Harvard University. *Id*. at ¶ 10. Settler-Plaintiffs' listings discriminate against Intervenor Wahbe on account of her national origin and Christian religion. *Id*. at ¶¶ 168-174.

## <u>ARGUMENT</u>

Intervenors satisfy the requirements for intervention of right under Federal Rule of Civil Procedure 24(a). Under this rule, a court must permit anyone to intervene if they meet the following requirements: "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter, by the disposition of the action; and (4) the interest is not adequately represented by an

existing party in the litigation." *Benjamin ex rel. Yock v. Dep't of Pub. Welfare*, 701 F.3d 938, 948 (3d Cir. 2012) (quotation omitted). "Rule 24 demands flexibility when dealing with the myriad situations in which claims for intervention arise." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998).

Intervenors Alwan, Jalud, and 'Anata have legitimate claims over the properties that Settler-Plaintiffs Moriyah and Jonathan Shapiro, Levy, Gordon, and Daniel and Tsofiya Jacob list on Airbnb and claim to own, (Intervenors' Countercl. at ¶¶ 82-84; 101-107; 116-124), which gives rise to interests sufficient to satisfy Fed. R. Civ. P. 24(a). First, Intervenors' property interest and the risk that it is impaired by the disposition of this litigation is sufficient to satisfy the requirements of intervention of right. Second, Intervenors have a legal interest in contesting Settler-Plaintiffs' public claims of ownership over these properties and to thereby vindicate their interest in preventing Settler-Plaintiffs' unjust enrichment at Intervenors' expense. Third, Intervenors who as Palestinians cannot rent or even access such properties, *Id.* at ¶¶ 50-55, including their very own land, have a legal interest in ensuring that they and other Palestinians are free from discrimination on the basis of national origin and religion. All of these interests, cannot be sufficiently protected by Defendant Airbnb and will be impaired if a decision by this Court allows Settler-Plaintiffs to list their illegal and discriminatory settlement properties on Airbnb.

Finally, even if intervention were not compulsory, it is within this Court's discretion to permit it under Federal Rule of Civil Procedure 24(b)(1), a discretion that should be exercised given the important interests Intervenors have in participating in a legal dispute that is very much about Intervenors and their rights.

## I.     INTERVENORS SHOULD BE GRANTED INTERVENTION AS OF RIGHT.

### A.     Intervenors' Motion is Timely.

Intervenors' Motion to Intervene is timely, given the three factors to consider: "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995). The mere passage of time is insufficient to show that intervention is untimely; rather, "the critical inquiry is: what proceedings of substance on the merits have occurred?" *Id.*

Under these standards, the Motion is plainly timely.  Defendant Airbnb moved to dismiss this case on January 29, 2019, and Settler-Plaintiffs' opposition is due March 19, 2019. Stipulated Order for Extension, D.I. 5, at 2. The parties have not completed briefing on Defendant's Motion to Dismiss, discovery has not yet begun, and there have been no other substantive proceedings on the merits. If the Court grants Intervenors' Motion, it will not cause any prejudice to the parties already involved in this litigation. Even if intervention could potentially cause delay, it would only be because the court "might have to consider [the Intervenors'] legitimate interest" in the litigation and is thus not a reason to find the Motion untimely. *Mountain Top Condo. Ass'n*, 72 F.3d at 370 (finding motion to intervene timely despite potential threat to settlement negotiations, as threat would only be caused by the fact that the parties would have to consider the intervenor's legitimate interests in the fund at issue).

### B.     Intervenors Have a Sufficient Interest in this Litigation.

To warrant intervention, Intervenors must identify an interest that is "significantly protectable." *Harris v. Pernsley,* 820 F.2d 592, 596 (3d Cir. 1987) (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971)). Interests must be "specific [to those seeking to intervene]," "capable of definition," and "legally cognizable." *Benjamin ex rel. Yock*, 701 F.3d at 951

(citations omitted). Courts have also noted that the interest must be "direct," as opposed to "contingent or remote." *Harris*, 820 F.2d at 596.

An interest in the property at issue in a litigation is one such legally cognizable interest. *See Mountain Top Condo. Ass'n*, 72 F.3d at 366-7 (holding that intervenors' interest in a particular fund was sufficient as it was "an interest in the very property that is the subject matter of the suit"). *See also Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994 (8th Cir. 1993) (putative intervenors, owners of land ceded by a Native American nation to the U.S. government, met the requirement for intervention in a lawsuit brought by Native Americans against the state for fishing, hunting and gathering rights on that land); *Oneida Indian Nation of N. Y. v. New York,* 201 F.R.D. 64, 70 (N.D.N.Y. 2001) (putative intervenor New York Brothertown Indian Nation had a legally cognizable interest in the land at issue in a lawsuit brought by Oneida Indian Nation against the government for their alleged violation of various treaties and federal statutes where intervenor showed "a modicum of evidence" sufficient to show possible ownership interest.).

However, a property interest is not necessary; a proposed intervenor's interest in protecting other rights may also be sufficient. For example, in *Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108 (3d Cir. 1992), student plaintiffs sued their high school arguing that religious ceremonies at commencement violated the Establishment Clause. Putative intervenors, other students at the high school, argued that a settlement agreement reached between the school and the plaintiffs violated their First Amendment rights. *Id*. at 1111-12. The court held that, if intervenors did indeed have protected First Amendment rights at the high school's graduation ceremony, then they should be allowed to intervene as of right. *Id*. at 1125. Similarly, in *Foster v. Gueory*, 655 F.2d 1319 (D.C. Cir. 1981), intervenors sought to intervene in an employment

discrimination lawsuit between their employer and other employees. The court held that, as intervenors claimed to have also been subject to the same wrongful acts at issue in the underlying litigation, a disposition in favor of defendants may impair intervenors' interest in being free from racial discrimination. *Id.* at 1324-25.

Here, Intervenors have both categories of interests. First, Intervenors Alwan, Jalud, and 'Anata have an interest in the properties that Settler-Plaintiffs Levy, Moriyah and Jonathan Shapiro, Gordon, and Daniel and Tsofiya Jacob list on Airbnb, claim to own, and seek to rent for profit. Specifically, as alleged, Intervenor Alwan is the rightful claimant of the land that Plaintiff Levy occupies. Intervenors' Countercl. at ¶¶ 101-107. The land that Plaintiffs Moriyah and Jonathan Shapiro occupy is registered for the benefit of Intervenor Jalud, *Id.* at ¶¶ 82-84, and the land that Settler-Plaintiffs Gordon and Jacob occupy is registered as part of Intervenor 'Anata's public lands. *Id.* at ¶¶ 116-124. Intervenors Alwan, Jalud, and 'Anata have a legitimate claim to these properties, which were unlawfully seized from them, and which Settler-Plaintiffs Levy, Moriyah and Jonathan Shapiro, Gordon, and Daniel and Tsofiya Jacob have trespassed onto and occupied in violation of international law. *Id.* at ¶¶ 82-84; 101-107; 116-124. That Intervenors seek to contest these Settler-Plaintiffs' asserted ownership over their property is the archetypal interest sufficient to permit intervention.

Second, Intervenors Alwan, Jalud, and 'Anata have a legal interest in asserting objections to Settler-Plaintiffs Levy, Moriyah and Jonathan Shapiro, Gordon, and Daniel and Tsofiya Jacob's public claims of ownership of these properties in a court of law. These Settler-Plaintiffs allege that they own the properties at issue in this litigation, which Intervenors contest as a matter of law. Am. Compl. at ¶¶ 2-12, 41.  Intervenors Alwan, Jalud, and 'Anata have a cognizable interest in asserting their rightful ownership over those properties and being afforded

an opportunity to contest the presumed ownership of their land by these Settler-Plaintiffs and the potential judicial ratification of that presumption that might follow from a ruling in favor of their claims against Airbnb.

Finally, all Intervenors have a legal interest in ensuring that they and other Palestinians are not discriminated against based on their national origin or religion. This is a separately cognizable interest that entitles Intervenors to participate in this litigation. *See Foster*, 655 F.2d 1319 (interest in being free from racial discrimination is a sufficient to warrant intervention). All Settler-Plaintiffs' Airbnb rentals are made available to guests under conditions that discriminate against Palestinians. As alleged, the properties are located in settlements that are in closed military zones to which Palestinians, including Intervenors, do not have access. Intervenors' Countercl. at ¶¶ 50-53. While residents of the West Bank who are Israeli citizens or Jewish can enter settlements, Palestinians are prohibited by military order and risk prosecution if they do. *Id*. at ¶¶ 50-55. The advertisements of those properties, by indicating that they are in settlements (which exclude Palestinians), are themselves discriminatory in violation of the Fair Housing Act. *Id.* at ¶¶ 168-174. Furthermore, the advertisements posted on Airbnb by Settler-Plaintiffs Moriyah Shapiro and Spolter explicitly state that their properties are located in Jewish neighborhoods, further indicating that they are located in areas that Palestinians cannot access. *Id*. at ¶ 57. Settler-Plaintiff Moriyah Shapiro's Airbnb posting also stated that "croses [sic] are forbidden," which further discriminates against Christians, including Intervenor Wahbe. *Id*. Moreover, Settler-Plaintiffs' discriminatory listings encourage non-Palestinians from the United States and elsewhere to stay in and support illegal rental properties on occupied Palestinian territory, thereby contributing to the settlement presence that discriminates against and displaces Intervenors Alwan and the residents of Intervenors Jalud and 'Anata. *Id*. at ¶ 74.

**C.      Intervenors' Interests May Be Practically Impaired by the Disposition of this Litigation.**

To warrant intervention, Intervenors must also demonstrate that their interests "may be affected or impaired, as a practical matter by the disposition of the action." *Spang*, 957 F.2d at 1122 (quoting *Harris*, 820 F.2d at 596). A court should assess whether there is a possible, "tangible threat to a legally cognizable interest." *Benjamin ex rel. Yock*, 701 F.3d at 951 (citations omitted). An intervenor need not "establish that their interests *will* be impaired. Rather, they must demonstrate only that the disposition of the action 'may' impair or impede their ability to protect their interests." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014). An impairment could be found, for example, if the proposed intervenors' "rights may be affected by a proposed remedy." *Seneca Res. Corp. v. Twp. of Highland, Elk Cnty., Pennsylvania*, 863 F.3d 245, 256–57 (3d Cir. 2017) (quoting *Spang*, 957 F.2d at 1123). A "court is free to look at the realistic and practical consequences of a potential ruling, not just the affects [sic] of the resolution of narrowly-tailored legal issues." *Am. Farm Bureau Fed'n v. U.S. Envtl. Prot. Agency*, 278 F.R.D. 98, 108 (M.D. Pa. 2011).

In *Grutter v. Bollinger*, proposed intervenor-defendants, African-American and Latinx prospective applicants and a nonprofit, satisfied the requirements for intervention in a lawsuit brought by two white applicants who sought to enjoin the University of Michigan from using applicants' race as a factor in determining admission. 188 F.3d 394 (6th Cir. 1999). The court held that the proposed intervenors' interest in gaining admission would be impaired if the litigation was disposed in plaintiffs' favor as "a substantial decline [in enrollment of African-American and Latinx students] *may well result* if the University is precluded from considering race as a factor in admissions." *Id.* at 399-400 (emphasis added).

Similarly here, the disposition of this action may practically impair the interests of Intervenors.  First, the disposition of this action will determine whether Airbnb can be used as a tool to unjustly enrich Settler-Plaintiffs Levy, Moriyah and Jonathan Shapiro, Gordon, and Daniel and Tsofiya Jacob through the illegal occupation and rental of Intervenors Alwan, Jalud, and 'Anata's property. Settler-Plaintiffs ask this Court to determine whether Airbnb's decision to delist properties in Israeli settlements in the occupied West Bank is discriminatory. Am. Compl., Prayer for Relief. If the Court answers this in the affirmative and accordingly enjoins Airbnb from delisting these properties, Intervenors Alwan, Jalud and 'Anata's land will continue to be listed as Airbnb rental properties without their consent and in contravention of their rightful claim to their land. This disposition would further unjustly enrich those Settler-Plaintiffs through the exploitation of Intervenors' property, which would constitute a substantial, concrete, and practical impairment of those Intervenors' interests. *See Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988) (unjust enrichment is "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience") (citations omitted).

Second, Settler-Plaintiffs' Complaint rests upon their assertion that they own (and lawfully possess) the properties at issue in this litigation. Am. Compl. at ¶¶ 2-12. But in fact Intervenors Alwan, Jalud, and 'Anata have legitimate claims to the properties listed by Settler-Plaintiffs Levy, Moriyah and Jonathan Shapiro, Gordon, and Daniel and Tsofiya Jacob and must be allowed to object to their claims of ownership to preserve their interest in the property. Intervenors' Countercl. at ¶¶ 82-84; 101-107; 116-124.  If Settler-Plaintiffs' claims to ownership of Intervenors' land goes unchallenged, or if Settler-Plaintiffs otherwise prevail in this litigation, the accompanying implicit or explicit judicial ratification of their interest in the property may

have a practical impact on Intervenors' ability to prosecute claims against Settler-Plaintiffs Levy, Moriyah and Jonathan Shapiro, Gordon, and Daniel and Tsofiya Jacob in relation to these properties.

Third, the disposition of this action may practically impair Intervenors' interests in ensuring that Palestinians, including Intervenors themselves, are not further discriminated against based on national origin and religion. This action may result in a decision by the Court that enjoins the delisting of Settler-Plaintiffs' Airbnb posts. As alleged in the Answer and Counter Claims, Settler-Plaintiffs' properties advertisements are inherently discriminatory, and their advertisements for them violate the Fair Housing Act on the basis of national origin and religion. *See* 42 U.S.C. § 3604; Intervenors' Countercl. at ¶¶ 168-74.  If Settler-Plaintiffs are awarded the declaratory and injunctive relief they seek, Airbnb would be compelled to continue to list Settler-Plaintiffs' properties and postings, which discriminate against Intervenors and other Palestinians. Such a disposition may also impair Intervenors' ability to prosecute claims in relation to Settler-Plaintiffs' discriminatory rentals and advertisements.

Finally, allowing this litigation to go forward without permitting Palestinian Intervenors to be heard not only risks potentially incorrect judicial findings of law and/or fact, but also risks perpetuating a false narrative about Israel's occupation of Palestine: that Israeli settlements in occupied Palestinian territory are lawful; that settlements are located in Israel when in fact they are located in occupied Palestinian territory; that Settler-Plaintiffs own or lawfully possess property in occupied Palestinian territory, that they are discriminated against, and that they should profit off of the displacement of Palestinians. For this reason, in addition to impacting Intervenors directly, the legal and property "interests jeopardized . . . are . . . of adequate public interest as to justify intervention." *Kleissler*, 157 F.3d at 973.

**D.  Intervenors' Interests Are Not Adequately Represented by Airbnb.**

Intervenors' interests are not adequately represented by the current parties to this litigation. The burden on Intervenors to show that their interests are not adequately represented is "minimal." *Spang*, 957 F.2d at 1123. "Representation will be considered inadequate on any of the following three grounds: (1) that although the applicant's interests are similar to those of a party, they diverge sufficiently that the existing party cannot devote proper attention to the applicant's interests; (2) that there is collusion between the representative party and the opposing party; or (3) that the representative party is not diligently prosecuting the suit." *Id*.

Here, Airbnb is not able to represent Intervenors Alwan, Jalud, or 'Anata's interests with regard to their properties, and Airbnb certainly cannot assert Intervenors' claims of ownership on their behalf.  Nor can Airbnb represent Intervenors' interests in ensuring that Palestinians are not discriminated against: Airbnb continues to list Settler-Plaintiffs' discriminatory advertisements on its platform (acknowledging that it has not yet implemented its policy to remove those listings) as well as other settlement properties in Jerusalem and the Golan Heights, also Palestinian territory occupied by Israel.  *Listings in Disputed Regions*, AIRBNB.COM (Nov. 19, 2018), https://press.airbnb.com/listings-in-disputed-regions/; *Framework for Evaluating Listings in Disputed Areas*, AIRBNB.COM (Jan. 17, 2019), https://press.airbnb.com/framework-for-evaluating-listings-in-disputed-areas/; Def.'s Mot. to Dismiss, D.I. 9, at 8.  Additionally, contrary to Intervenors' interests, Airbnb has argued that the Fair Housing Act does not apply in this context.  Def.'s Mot. to Dismiss at 10-14.  Palestinian Intervenors' interests sufficiently diverge from those of Defendant Airbnb and therefore cannot be adequately represented by Defendant Airbnb.

15

## II.   THIS COURT SHOULD EXERCISE ITS DISCRETION TO GRANT PERMISSIVE INTERVENTION.

Even where intervention is not required as of right, Rule 24(b)(1) provides the Court with broad discretion to allow intervention where a movant shows a "claim or defense that shares with the main action a common question of law or fact," and that such an intervention would not "unduly delay or prejudice the adjudication of the original parties' rights." *United States v. Territory of Virgin Islands*, 748 F.3d 514, 524 (3d Cir. 2014) (citing Fed. R. Civ. P. 24(b)).

As argued above, Intervenors' Motion is timely and will not unduly delay or prejudice the litigation.  Moreover, Intervenors' interests are related to the questions of law and fact directly at issue in the primary litigation: their interests are in the same exact properties which Settler-Plaintiffs Levy, Moriyah and Jonathan Shapiro, Gordon, and Daniel and Tsofiya Jacob claim to own, and questions about whether all Settler-Plaintiffs' listing and advertisement of properties are lawful.  Intervenors seek to assert that the bona fide subjects of discrimination arising out of this litigation are Intervenors, not Settler-Plaintiffs. Excluding Palestinian Intervenors from an opportunity to be heard on these important issues would be deeply unjust to Intervenors and their interests.

## CONCLUSION

As Intervenors satisfy the requirements of intervention of right, their Motion to Intervene should be granted. Even if intervention were not compulsory, this Court should exercise its discretion to permit intervention.

Dated: March 18, 2019

_____
Diala Shamas (*pro hac vice* motion pending)
Maria LaHood (*pro hac vice* motion pending)
Katherine Gallagher (*pro hac vice* motion pending)
Astha Sharma Pokharel (*pro hac vice* motion pending)
Baher Azmy (*pro hac vice* motion pending)
CENTER FOR CONSTITUTIONAL RIGHTS

666 Broadway, 7th Floor
New York, NY 10012
dshamas@ccrjustice.org
(212) 614-6426

/s/ Misty A. Seemans
Misty A. Seemans, DE Bar # 5975
O.P.D. (Pro Bono; cooperating attorney with Center
for Constitutional Rights)
820 North French Street
Third Floor
Wilmington, Delaware 19801
mseemans@ccrjustice.org
(302) 577-5126