# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

_____

SAMUEL SILBER; SIDNEY EDDY
STRULOVITS; SHERI LYNN
STRULOVITS; MOSHE GORDON;
DANIEL JACOB; TSOFIYA JACOB;
LEWIS WEINGER; MORIYAH
SHAPIRO; JONATHAN SHAPIRO;
INBAL NAZDARE LEVY; YAIR
SPOLTER; ERIC CHARLES MARX;
SUSAN LYNN MARX; ALON MADIEL;
DANIELLE MADIEL; GULIE MADIEL;
HOWARD RABIN; JEFFREY T.
SCHWARTZ; and DAVID TESLER,

        *Plaintiffs*,

   v.

AIRBNB, Inc.,

        *Defendant*.

_____

C.A. No. 1:18-cv-01884-RGA

**Oral Argument Requested**

## PUTATIVE INTERVENORS' REPLY IN SUPPORT OF THEIR MOTION TO PROCEED WITH CLAIMS AGAINST SETTLER-PLAINTIFFS AND MEMORANDUM OF LAW IN SUPPORT

Misty A. Seemans, DE Bar # 5975
O.P.D. (Pro Bono; cooperating attorney
with Center for Constitutional Rights)
820 North French Street
Third Floor
Wilmington, Delaware 19801
mseemans@ccrjustice.org
(302) 577-5126

Diala Shamas (*pro hac vice*)
Maria LaHood (*pro hac vice*)
Katherine Gallagher (*pro hac vice*)
Astha Sharma Pokharel (*pro hac vice*)
Baher Azmy (*pro hac vice*)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
dshamas@ccrjustice.org
(212) 614-6426

Dated: May 23, 2019

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ...................................................................................................................... 1

ARGUMENT ............................................................................................................................... 2

    I.    Plaintiffs Cite No Authority Contradicting Precedent that Allows District Courts to Exercise Jurisdiction Over a Pending Motion to Intervene Even After Dismissal Under FED. R. CIV. P. 41(a)(1)(A)(ii) ........................................................................................ 2

    II.    Unlike in the Cases Cited By Plaintiffs, Intervenors Asserted Their Right to Intervene Before the Original Parties Stipulated to Dismissal ........................................................ 6

    III.    Plaintiffs Fail to Address the Harm Resulting From the Stipulation and the Prejudice that Will Result if This Court Does Not Allow Intervenors to Proceed With Claims Against Settler-Plaintiffs ........................................................................................ 7

    IV.    Intervenors Satisfy the Standard For Intervention Under FED. R. CIV. P. 24(a) ................ 9

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**

*Alt. Research & Dev. Found. v. Veneman*,
  262 F.3d 406 (D.C. Cir. 2001) ........................................................................................... 2, 3

*Benjamin ex rel. Yock v. Dep't of Pub. Welfare*,
  701 F.3d 938 (3d Cir. 2012) ................................................................................................. 10

*Brewer v. Sessions*,
  863 F.3d 861 (D.C. Cir. 2017) ............................................................................................... 2

*Capriotti's Sandwich Shop, Inc. v. Taylor Family Holdings, Inc.*,
  857 F. Supp. 2d 489 (D. Del. 2012) ....................................................................................... 9

*CVLR Performance Horses, Inc. v. Wynne*,
  792 F.3d 469 (4th Cir. 2015) ......................................................................................... 3, 4, 7

*CVLR Performance Horses, Inc. v. Wynne*,
  No. 6:11-CV-00035 (W.D. Va. Dec. 9, 2013) (order dismissing case) ..................................... 4

*Fed. Deposit Ins. Corp. v. Jennings*,
  816 F.2d 1488 (10th Cir. 1987) .............................................................................................. 3

*Fleet Capital Corp. v. Merco Joint Venture, LLC*,
  No. 02 CV 0279 (ILG), 2002 WL 31528633 (E.D.N.Y. Sept. 3, 2002) ................................... 8

*Fuller v. Volk*,
  351 F.2d 323 (3d Cir. 1965) ............................................................................................... 4, 8

*GMAC Commercial Mortg. Corp. v. LaSalle Bank Nat'l Ass'n*,
  213 F.R.D 150 (S.D.N.Y 2003) ......................................................................................... 6, 7

*Homesite Ins. Co. of the Midwest v. Robards*,
  No. 3:13–CV–515–TAV–CCS, 2014 WL 359823 (E.D. Tenn. Feb. 3, 2014) .......................... 6

*Love v. Wal-Mart Stores, Inc.*,
  865 F.3d 1322 (11th Cir. 2017) .............................................................................................. 2

*Marex Titanic, Inc. v. The Wrecked & Abandoned Vessel*,
  2 F.3d 544 (4th Cir. 1993) ............................................................................................ 4, 6, 7

*McKay v. Heyison*,
  614 F.2d 899 (3d Cir. 1980) ................................................................................................... 8

Case 1:18-cv-01884-RGA   Document 22   Filed 05/23/19   Page 4 of 14 PageID #: 391

*Mut. Produce, Inc. v. Penn Cent. Transp. Co.*,
    119 F.R.D. 619 (D. Mass. 1988) ............................................................................................... 6

*Nat'l City Golf Fin., a Div. of Nat'l City Commercial Capital Co., L.L.C. v. Scott*,
    899 F.3d 412 (5th Cir. 2018) .................................................................................................... 5

*Neidig v. Rendina*,
    298 F. App'x 115 (3d Cir. 2008) ............................................................................................... 3

*Odle v. Flores,*
    899 F.3d 344 (5th Cir. 2017) (en banc) ................................................................................ 4, 5

*Odle v. Wal-Mart Stores, Inc.*,
    No. 16-10347, 683 Fed. Appx. 288, 2017 WL 1163339 (5th Cir. Mar. 27, 2017) ..................... 2

*Reagan v. Fox Navigation, LLC.*,
    No. Civ.A. 302CV627CFD, 2005 WL 2001177 (D. Conn. Aug. 17, 2005) ............................. 7

*Sommers v. Bank of Am., N.A.*,
    835 F.3d 509 (5th Cir. 2016) .................................................................................................... 5

*St. Bernard Parish v. Lafarge N. Am., Inc.*,
    914 F.3d 969 (5th Cir. 2019) .................................................................................................... 5

*The Paquete Habana*,
    175 U.S. 677 (1900) .................................................................................................................. 9

*U.S. Steel Corp. v. Envtl. Prot. Agency,*
    614 F.2d 843 (3d Cir. 1979) ..................................................................................................... 8

*Zivotofsky ex rel. Zivotofsky v. Clinton*,
    566 U.S. 189 (2012) .................................................................................................................. 9

**Statutes**

Alien Tort Statute, 28 U.S.C. § 1350 ............................................................................................. 9

Fair Housing Act, 42 U.S.C. § 3601 et seq .................................................................................... 9

**Rules**

FED. R. CIV. P. 24(a) .................................................................................................................. 3, 9

FED. R. CIV. P. 41(a) ............................................................................................................. *passim*

FED. R. CIV. P. 60(b) ...................................................................................................................... 3

**INTRODUCTION**

Plaintiffs (but not Defendant, Airbnb) seek to extinguish Intervenors' pending Motion to Intervene through an overly formalistic understanding of the consequences of the stipulated dismissal it obtained in this case. None of the cases Plaintiffs cite, which concern primarily *post-dismissal* interventions, preclude this Court from allowing Intervenors to proceed with their Motion to Intervene, which was filed *prior* to the parties' stipulated dismissal for the very purpose of ensuring their interests would be protected in this litigation. On the contrary, precedent and principle obligates this Court to decide Intervenors' pending Motion to Intervene because Intervenors seek to bring claims against Settler-Plaintiffs independent of those settled by the parties. Prevailing caselaw authorizes the Court to grant Intervenors relief.

Precedent likewise supports Intervenors' request to advance their claims against Settler-Plaintiffs in order to avoid the prejudice and needless judicial inefficiency that would come from having to start a separate action which, in turn, would require Intervenors to embark on international service of process, and possible litigation regarding personal jurisdiction. Given the existence of a live controversy, it makes little sense to burden Intervenors and the Court with this process and delay, so as only—at long last—to arrive at the point where parties are now. This would be particularly unjust to Intervenors, when Intervenors' consent to delay briefing on the Motion gave the parties the very time they needed to come to the agreement that Plaintiffs now assert precludes hearing Intervenors' Motion.

Plaintiffs also ignore the impact that the settlement agreement between Plaintiffs and Defendant has on Intervenors' property and legal interests. Under the settlement terms, Settler-Plaintiffs can continue to trespass on, claim ownership over, and unjustly enrich themselves with Intervenors' property, discriminate against Intervenors, and advertise rental properties on

1

Airbnb's platform on discriminatory terms. Such an outcome is precisely what Intervenors sought to prevent through their intervention.

**ARGUMENT**

I. **Plaintiffs Cite No Authority Contradicting Precedent That Allows District Courts to Exercise Jurisdiction Over a Pending Motion to Intervene Even After Dismissal Under FED. R. CIV. P. 41(a)(1)(A)(ii).**

Plaintiffs have not cited a single case that contradicts existing law in the Fourth, Fifth, Tenth, and D.C. Circuits, which allows courts to exercise jurisdiction over a motion to intervene or an appeal of a denial of such a motion, even after the underlying action has been dismissed through a stipulation under FED. R. CIV. P. 41(a)(1)(A)(ii). The Third Circuit cases Plaintiffs cite correctly state that a stipulated dismissal deprives a district court of jurisdiction over the claims between the stipulating parties. Pls.' Opp'n, D.I. 21, at 3-4. However, those cases do not answer the question of whether a stipulated dismissal strips the court of jurisdiction to hear a motion to intervene by a third party – and certainly not one that is pending *prior* to dismissal. Indeed, "[t]he only courts to have addressed that question have held the district court may grant post-dismissal motions to intervene by would-be class members." *Love v. Wal-Mart Stores, Inc.*, 865 F.3d 1322, 1326 n. 2 (11th Cir. 2017) (citing *Brewer v. Sessions*, 863 F.3d 861 (D.C. Cir. 2017); *Odle v. Flores*, 899 F.3d 342 (5th Cir. 2017), *reh'g denied*, 899 F.3d 344 (5th Cir. 2017) (en banc)). As discussed below, *infra* p. 5, this rule is not limited to the class action context.

Circuit courts have also held that a stipulated dismissal does not extinguish their ability to review denials of motions to intervene when the motion is made while there is a live controversy and the court can still provide the putative intervenor with effective relief. Plaintiffs' argument that *Alternative Research & Development Foundation v. Veneman,* 262 F.3d 406 (D.C. Cir. 2001), included "no discussion whatsoever of the parties' dismissal of the action pursuant to Fed.

R. Civ. P. 41(a)" is wrong. Pls.' Opp'n 8. In *Veneman,* the original parties entered a stipulated dismissal while putative intervenor's motion to intervene was pending, and the putative intervenor filed a Rule 60(b) motion to vacate the dismissal. The district court denied both motions on the grounds that the stipulated dismissal deprived the court of jurisdiction to decide the motions.[1] The D.C. Circuit held that its "jurisdiction to review that denial [of the motion to intervene] is not affected by the fact that the district court denied intervention *after* the stipulated dismissal was entered; the dismissal does not render the appeal moot." *Veneman,* 262 F.3d at 410 (citations omitted). The court reasoned that if granted intervention, the putative intervenor would have standing to appeal the district court's denial of the Rule 60(b) motion, and the D.C. Circuit would review that Rule 60(b) denial. The court concluded that "[b]ecause we can potentially grant [putative intervenor] effective relief, this appeal is not moot." *Id.*[2] *See also Neidig v. Rendina,* 298 F. App'x 115, 116 n. 1 (3d Cir. 2008) (allowing an appeal of the denial of a motion to intervene to move forward despite the fact that court had granted a motion to dismiss of the underlying claims); *Fed. Deposit Ins. Corp. v. Jennings*, 816 F.2d 1488, 1491 (10th Cir. 1987) (observing that a settlement between the parties did not resolve the would-be intervenors' claims, and that "[t]o allow a settlement between parties to moot an extant appeal . . . might well provide incentives for settlement that would run contrary to the interests of justice").

In *CVLR Performance Horses, Inc. v. Wynne*, 792 F.3d 469 (4th Cir. 2015), a case relying on *Veneman*, while intervenors' appeal of the district court's denial of their motion to intervene as plaintiffs was pending, the original parties reached a settlement in the underlying

---

[1] The district court, in the alternative, also reached the merits of the intervention motion, finding that even if it had jurisdiction, the putative intervenors did not satisfy the Rule 24 standard. *Veneman*, 262 F.3d at 407–08.

[2] The D.C. Circuit ultimately affirmed the district court's denial because the intervenor could not show that its ability to protect its interest was impaired. *Veneman*, 262 F.3d at 411.

3

action and stipulated to dismissal under FED. R. CIV. P. 41(a)(1)(A)(ii). *CVLR Performance Horses, Inc. v. Wynne*, No. 6:11-CV-00035 (W.D. Va. Dec. 9, 2013) (order dismissing case), D.I. 181. The defendants similarly argued that "the dismissal of the underlying action rendered the appeal moot because [intervenors] could not possibly intervene in a case that no longer exists." *Id.* at 473. The Fourth Circuit disagreed: "when the motion to intervene is made while the controversy is live and the subsequent disposition of the case does not provide the relief sought by the would-be intervenors . . . we can provide an effective remedy on appeal and therefore have jurisdiction." *Id.* at 475. The remedy the Fourth Circuit envisioned was to allow the putative intervenors to proceed with their claims against the defendants in the otherwise settled action.[3] *Id.* at 476. *See also Fuller v. Volk,* 351 F.2d 323, 329 (3d Cir. 1965) (holding that a court may treat the pleadings of an intervenor as a separate action, especially when the intervenor has an independent basis for jurisdiction and failure to adjudicate the claim will result only in unnecessary delay). The relief that Intervenors seek here is precisely the relief that the Fourth Circuit envisioned for putative intervenors in *CVLR Performance Horses*: that this Court grant Intervenors' Motion to Intervene, and allow them to proceed with their claims against Settler-Plaintiffs.

The only other circuit opinion that Plaintiffs cite is *Marex Titanic v. The Wrecked & Abandoned Vessel*, but that case involved a voluntary dismissal by the plaintiff under FED. R. CIV. P. 41(a)(1)(A)(i) without prejudice, not a stipulated dismissal under 41(a)(1)(A)(ii) with prejudice. 2 F.3d 544 (4th Cir. 1993). That distinction is crucial. The court in *Odle v. Flores* distinguished *Marex Titanic* because it did not involve a stipulated dismissal with prejudice

---

[3] Ultimately, the denial of the motion to intervene was affirmed as putative intervenors had attempted to intervene in the RICO lawsuit after the statute of limitations had lapsed, and equitable tolling was not warranted. *CVLR Performance Horses,* 792 F.3d at 478.

pursuant to FED. R. CIV. P. 41(a)(1)(A)(ii), but instead a plaintiff's unilateral voluntary dismissal under FED. R. CIV. P. 41(a)(1)(A)(i), emphasizing the "importance of the right to unilaterally avoid a merits determination." 899 F.3d 344, 346 (5th Cir. 2017) (en banc). Moreover, a voluntary dismissal of claims by a plaintiff without prejudice leaves the status quo unchanged, and therefore might not impair an intervenor's interest. A stipulated dismissal with prejudice, on the other hand—as with a judgment—can directly impair the interests that an intervenor is seeking to protect, as such stipulations settle the claims between the stipulating parties.

Plaintiffs' attempt to distinguish *Odle* because it arose in the class action context is unpersuasive. *Odle* relied on *Sommers v. Bank of America, N.A.*, which was not a class action, but rather a case in which a shareholder moved to intervene in a lawsuit between a bankruptcy trustee and Bank of America, and in which the original parties had stipulated to a dismissal. *Odle*, 899 F.3d at 345. *See also Sommers v. Bank of Am., N.A.*, 835 F.3d 509, 513 (5th Cir. 2016) (rejecting the proposition that "intervention is always improper after a case has been dismissed"). *Sommers* has been applied outside of the class action context. In *St. Bernard Parish v. Lafarge N. Am., Inc.*, 914 F.3d 969 (5th Cir. 2019), a former attorney in the litigation moved to intervene after a stipulated dismissal to collect attorneys' fees from the settlement between the original parties. The Fifth Circuit cited *Sommers* to note that "the dismissal did not deprive the district court of jurisdiction to grant intervention or to grant the ultimate relief sought by [putative intervenor]" before ultimately affirming denial of the intervention motion on other grounds. *Id.* at 976. Moreover, *Sommers* and *Odle* have been cited as recognizing the general rule that "a district court may have jurisdiction to decide a motion to intervene after a Rule 41(a)(1) dismissal with prejudice." *Nat'l City Golf Fin., a Div. of Nat'l City Commercial Capital Co., L.L.C. v. Scott*, 899 F.3d 412, 416 n. 4 (5th Cir. 2018).

5

**II.   Unlike in the Cases Cited by Plaintiffs, Intervenors Asserted Their Right to Intervene Before the Original Parties Stipulated to Dismissal.**

Plaintiffs' argument rests on the entirely false premise that Intervenors are seeking to "first intervene in a case after it is already dismissed." Pls.' Opp'n 7. In fact, and to prevent precisely the prejudicial outcome from the stipulations between the parties, Intervenors filed their Motion to Intervene on March 18, 2019, prior to the deadline for Plaintiffs' Opposition to Defendant's Motion to Dismiss and more than three weeks before the stipulated dismissal, and were not aware of any settlement negotiations between the parties. Intervenors stipulated to extend the briefing schedule on the Motion to Intervene by over a month following Plaintiffs' request to do so to "give the court time to decide [Defendant's] 12(b)(6) motion." Without notice to Intervenors, Plaintiffs and Defendant then entered into a stipulated dismissal on the merits and with prejudice on April 9, 2019—the day briefing on the Motion to Intervene would have been complete. Unlike the cases cited by Plaintiffs, Intervenors here moved to intervene before the parties stipulated to dismiss, not after.

In every case Plaintiffs rely upon save for one district court opinion,[4] the putative intervenors filed their motion *after* dismissal. *See Marex Titanic*, 2 F.3d 544 (4th Cir. 1993) (motion to intervene filed a day after plaintiff voluntarily dismissed its action under FED. R. CIV. P. 41(a)(1)(A)(i)); *Homesite Ins. Co. of the Midwest v. Robards*, No. 3:13–CV–515–TAV–CCS,

---

[4] The only case cited by Plaintiffs that involved a motion to intervene filed *prior* to a stipulated dismissal is a 1988 opinion from the District of Massachusetts in which intervenors filed their motion to intervene *after* intervenors became aware of settlement negotiations between the original parties. *Mut. Produce, Inc. v. Penn Cent. Transp. Co.*, 119 F.R.D. 619 (D. Mass. 1988). The only issue addressed by the court was the putative intervenors' argument that they were parties to the action, so the stipulated dismissal was improper because it was not signed by all parties—an argument that Intervenors here do not make. The court did not address the analysis mandated by subsequent court of appeals decisions that Intervenors urge here: because Intervenors assert claims against Settler-Plaintiffs that are independent of the claims that were settled by the parties, Intervenors can be granted effective relief.

6

2014 WL 359823 at *2 (E.D. Tenn. Feb. 3, 2014) (motion to intervene filed 9 days after FED. R. CIV. P. 41(a)(1)(A)(ii) dismissal); *GMAC Commercial Mortg. Corp. v. LaSalle Bank Nat'l Ass'n*, 213 F.R.D 150 (S.D.N.Y 2003) (no motion to intervene, but a letter to vacate dismissal was filed after dismissal); *Reagan v. Fox Navigation, LLC.,* No. Civ.A. 302CV627CFD, 2005 WL 2001177 (D. Conn. Aug. 17, 2005) (motion to intervene filed one day after FED. R. CIV. P. 41(a)(1)(A)(ii) dismissal). In fact, since *Marex Titanic*, the Fourth Circuit decided *CVLR Performance Horses*, where proposed intervenors had filed a motion to intervene, which was denied before the original parties stipulated to a dismissal. 792 F.3d at 474. On appeal, the court disagreed with appellee's argument that the appeal was moot, reasoning that this case was not like "*GMAC* in which the would-be intervenors failed to assert their rights until after the underlying case was concluded." *Id.* at 475.

### III. Plaintiffs Fail to Address the Harm Resulting From the Stipulation and the Prejudice That Will Result If This Court Does Not Allow Intervenors to Proceed With Claims Against Settler-Plaintiffs.

Plaintiffs fail entirely to address the fact that the stipulated dismissal has prejudiced Intervenors by impairing their interests, which Defendant Airbnb undeniably did not adequately represent. Through the settlement agreement and stipulation of dismissal, Defendant Airbnb agreed to continue to post Settler-Plaintiffs' advertisements of rental properties that are on Intervenors' land, in a manner that discriminates against Intervenors and unjustly enriches Settler-Plaintiffs. The stipulated dismissal thereby permits continued violations of Intervenors' property and legal interests. This is precisely what Intervenors were seeking to prevent through their intervention: Intervenors sought to protect their interests in the actual properties that Settler-Plaintiffs list, their legal interests in contesting Settler-Plaintiffs' claims of ownership over, and enrichment from, Intervenors' properties, and their legal interests in being free from

discrimination—all interests which could have been, and in fact ultimately were, practically impaired by the disposition of the litigation. Mot. to Intervene, D.I. 13, at 10-11.

Plaintiffs half-heartedly argue, without any authority, that requiring Intervenors to commence a new action, serve process, and potentially argue personal jurisdiction is "hardly 'prejudicial,' particularly since" Intervenors could still file a separate action and serve process. Pls.' Opp'n 9. To the contrary, clear Third Circuit precedent encourages courts to treat the claims of intervenors as separate actions for reasons of judicial economy and to avoid unnecessary delay. *See Fuller v. Volk*, 351 F.2d 323 (3d Cir. 1965) (citing delay and expense of a new suit as a reason to allow intervenors to pursue their claims after dismissal); *McKay v. Heyison*, 614 F.2d 899, 907–08 (3d Cir. 1980) (citing *Fuller*); *see also U.S. Steel Corp. v. Envtl. Prot. Agency*, 614 F.2d 843, 845-46 (3d Cir. 1979) (citing *Fuller,* as representative of the "weight of authority in the United States Courts of Appeals," allowing proceeding with intervenors' claims for "judicial economy").

The prejudice is especially strong here, where failure to fully brief and hear the Motion to Intervene was caused by Plaintiffs' request to extend the briefing schedule under the pretense of waiting for a decision on the Motion to Dismiss. Otherwise, Intervenors' Motion to Intervene would have been considered by this Court once fully briefed, and given that Intervenors have a right to intervene, their Motion should have been and still should be granted by this Court. *See Fleet Capital Corp. v. Merco Joint Venture, LLC,* No. 02 CV 0279 (ILG), 2002 WL 31528633, at *3-4 (E.D.N.Y. Sept. 3, 2002) (allowing putative intervenor to proceed with its claims against defendant, where putative intervenor had agreed to adjourn hearing on its motion to intervene to allow parties to reach a resolution of all claims, but claims between original parties were settled and voluntarily dismissed while putative intervenor's were not).

Finally, Plaintiffs assert, again without authority, that unrelated lawsuits filed by Palestinians (including some but not all Intervenors) in Israeli courts show that they would not be prejudiced by a denial of intervention here.[5] Pls.' Opp'n 9. Lawsuits filed in another country, against different parties and regarding different claims, are irrelevant here. Intervenors have not petitioned the Israeli courts for the relief they seek through their Counterclaims here, which include claims under the Fair Housing Act and the Alien Tort Statute, and for trespass and unjust enrichment. As alleged, Intervenors only learned the identity of the Settler-Plaintiffs unlawfully occupying their property when they filed their Complaint, D.I. 1, in this case. *See* Counterclaims, D.I. 13-1, at ¶¶ 100, 112, 129.[6]

## IV. Intervenors Satisfy the Standard For Intervention Under FED. R. CIV. P. 24(a)

Plaintiffs argue that because Intervenors want to proceed with their claims against Settler-Plaintiffs, Intervenors' claims have not been impacted and their interests in the underlying action

---

[5] Intervenors' Counterclaims refer to challenges by two intervenors: the village of Jalud's unsuccessful effort to halt the construction of Adei Ad settlement, ¶¶ 97, 99, and the town of 'Anata and its residents' legal challenges to the seizure of their land, ¶ 128. If anything, these efforts by some Intervenors to challenge the dispossession of their lands through the Israeli legal system are illustrative of the futility of those efforts, in light of the continued dispossession and discrimination which they detail in their pleadings.

[6] Plaintiffs' remarks regarding Intervenors' Counterclaims are premature and misplaced. *See* Pls.' Opp'n 1. Intervenors most certainly do not seek to adjudicate the "Arab-Israeli conflict," *id.*, but violations of law that federal courts are constitutionally required to adjudicate. *See, e.g., Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189, 205 (2012) ("Nor may courts decline to resolve a controversy within their traditional competence and proper jurisdiction simply because the question is difficult, the consequences weighty, or the potential real for conflict with the policy preferences of the political branches."). Federal courts regularly decide international law issues, as they are required to do. *The Paquete Habana*, 175 U.S. 677, 700 (1900). Similarly, federal courts are fully capable of applying the law of a foreign state, and often do so. If intervention is permitted, Plaintiffs can make any number of arguments against Intervenors' Counterclaims, including with regard to venue or jurisdiction. Pls.' Opp'n 9. However, they "can claim no unfairness based upon this court's exercise of jurisdiction over [them], since one who enjoys the full benefits of access to a forum's courts as plaintiff may not simultaneously claim immunity from that forum's authority as defendant." *Capriotti's Sandwich Shop, Inc. v. Taylor Family Holdings, Inc.*, 857 F. Supp. 2d 489, 501 (D. Del. 2012) (internal quotations omitted).

have therefore not been impaired. Pls.' Opp'n 11. However, the relevant inquiry before the Court is whether Intervenors meet the criteria for intervention, including by demonstrating that there is practical impairment of their interests (not their *claims*) by the litigation. *See Benjamin ex rel. Yock v. Dep't of Pub. Welfare*, 701 F.3d 938, 948 (3d Cir. 2012) (intervention of right is warranted where "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter, by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation.") (quotations omitted). Intervenors plainly meet these criteria, Mot. to Intervene 8-15, and Plaintiffs' only argument to the contrary is that "the underlying action has already been settled and dismissed." Pls.' Opp'n 11. If anything, the parties' settlement only *strengthens* the arguments for intervention, as it confirms that disposition of the litigation threatened Intervenors' interests, and that the parties do not adequately represent those interests.

## CONCLUSION

This Court should decide Intervenors' pending Motion to Intervene, and permit Intervenors' claims to proceed against Settler-Plaintiffs as a separate action in order to avoid prejudice and delay.

Dated: May 23, 2019

/s/ Misty A. Seemans
Misty A. Seemans, DE Bar # 5975
O.P.D. (Pro Bono; cooperating attorney with Center for Constitutional Rights)
820 North French Street, Third Floor
Wilmington, Delaware 19801
mseemans@ccrjustice.org
(302) 577-5126

/s/Diala Shamas
Diala Shamas (*pro hac vice*)
Maria LaHood (*pro hac vice*)
Katherine Gallagher (*pro hac vice*)
Astha Sharma Pokharel (*pro hac vice*)
Baher Azmy (*pro hac vice*)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
dshamas@ccrjustice.org
(212) 614-6426